893 A.2d 1067

**CANAJ, INC.**

v.

**BAKER AND DIVISION PHASE III, et al.**

No. 72, Sept. Term, 2005.

Court of Appeals of Maryland.

March 6, 2006.

Michael S. Rubenstein, Baltimore, for appellant.

Kyriakos P. Marudas, Asst. City Solicitor (Ralph S. Tyler, City Solicitor and William R. Phelan, Jr., Principal Counsel of Baltimore City Department of Law, Baltimore), on brief, for appellees.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, J.

Between March 14, 2003, and June 29, 2004, the Circuit Court for Baltimore City foreclosed Canaj, Inc.'s (appellant) right of redemption to a number of properties sold at a tax sale on August 8, 2001. Appellant had moved to dismiss the foreclosure proceedings as to only two of the properties, 523 Senker Place and 2300 Brunt Street. It filed no prejudgment motions to dismiss as to any of the other of its properties. As to those two properties only, the foreclosure actions were dismissed by express agreement of the parties.

After having failed to file any prejudgment motions to dismiss in respect to any of the other properties on the grounds here raised, appellant, following the foreclosure, on August 19, 2004, moved to vacate all of the judgments and void the tax sales as to the other properties based on fraud, mistake or irregularity. The trial judge denied the motions

and appellant filed an appeal in the Court of Special Appeals. This Court, on its own motion, granted certiorari before the case was heard by the intermediate appellate court. *Canaj, Inc. v. Baker and Division III*, 389 Md. 398, 885 A.2d 823 (2005).

## I. Facts

Appellant was the owner of fourteen properties located in Baltimore City ("City"). For over seven years appellant failed to pay property taxes, leading the City to attempt to dispose of the properties at a tax sale. Baker and Division III[1] ("Baker") purchased the properties at the tax sale on August 8, 2001. Baker filed timely complaints seeking to foreclose appellant's rights of redemption on November 5, 2001. The proceedings were consolidated into two separate cases in the Circuit Court for Baltimore City: 24–C–01–005462 ("5462") and 24–C–01–005463 ("5463").[2] The court issued judgments foreclosing appellant's right of redemption on March 14, 2003

---

1. Although Baker and Division III, LLC is the named party, this case was briefed and argued by the City Solicitor on behalf of the Mayor and City Council of Baltimore City.

2. Case 5462 concerned the following properties: 523, 529–535 Senker Place; 2301, 2303, 2305, 2307, 2309, 2311, and 2313 Pennsylvania Avenue. Case 5463 concerned the following properties: 2300 Brunt Street; 571, 575, 588, and 592 Baker Street.

 Two of these properties, 523 Senker Place and 2300 Brunt Street, are not part of this appeal as the complaints to foreclose the rights of redemption on them were dismissed *by agreement of the parties* on October 21, 2003, based upon appellant's motions alleging that those specific tax sales, with respect to those two properties were void because of a lack of citation of the properties as abandoned or vacant and that the sales prices were less than the taxes due.

 There was no assertion of these specific issues as to the properties at issue here prior to the judgments foreclosing the rights of redemption. The issues raised in the present appeal, were actually only presented in the trial court as a part of the prejudgment motions as to 523 Senker Place and 2300 Brunt Street. They were never raised with respect to the properties at issue here. It was only in the later post-judgment motion to vacate that appellant argued as to these properties that the sales were void because the City failed to cite the properties and that they were sold for a sum less than the taxes owed.

(571 Baker Street);[3] April 27, 2004 (592 Baker Street); May 11, 2004 (575 Baker Street); and June 29, 2004 (588 Baker Street); and on June 11, 2004, for all the properties in case 5462.

On August 19, 2004, forty-one days after the last foreclosure judgment was entered, appellant, represented by new counsel, filed a motion seeking in essence, vacation of the judgments based upon allegations of fraud, mistake or irregularity. The Circuit Court held a hearing on the motion on April 4, 2005, and on April 5, 2005, it filed an order making the following findings:

"1. That there was no fraud, mistake or irregularity within the meaning of Maryland Rule 2–535.[4]

"2. That there is no lack of jurisdiction or constructive fraud as defined in Section 14–845 of the Tax–Property Article of the Maryland Code.

"3. That the City of Baltimore is precluded from collecting any taxes [against the original owner] on the properties

3. Under Maryland Code (1985, 2001 Repl.Vol., 2004 Supp.), § 14–845(a) of the Tax–Property Article, appellant's claim of constructive fraud regarding this particular property is barred because the motion to reopen the foreclosure judgment was filed more than one year after the judgment was entered.

4. Rule 2–535 provides:
 "(a) **Generally.** On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2–534.
 "(b) **Fraud, mistake, irregularity.** On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity."
 This rule embodies Maryland Code (1973, 2002 Repl.Vol.), § 6–408 of the Courts and Judicial Proceedings Article, which states:
 "For a period of 30 days after the entry of a judgment, or thereafter pursuant to motion filed within that period, the court has revisory power and control over the judgment. After the expiration of that period the court has revisory power and control over the judgment only in case of fraud, mistake, irregularity, or failure of an employee of the court or of the clerk's office to perform a duty required by statute or rule."

included in the above-referenced case." [5]

Appellant subsequently filed this appeal.

The following questions are presented for our review:

"1. Did the circuit court have jurisdiction to enter judgments foreclosing the right of redemption on the Appellant's properties in view of the fact that a requirement of the applicable statute was ignored causing the properties to be illegally included in the special tax sale held by the Mayor and City Council of Baltimore City?

"2. Did the lower court lack jurisdiction to enter judgements foreclosing the right of redemption on Appellant's properties because of constructive fraud?

"3. Did the lower court deprive the Appellant of its properties without due process of law in violation of the Declaration of Rights of Maryland and the Fourteenth Amendment of the United States Constitution?"

We shall hold for the reasons that follow that the Circuit Court properly entered the judgments of foreclosure against the appellant, that Baltimore City's actions did not constitute constructive fraud, and that appellant's due process rights were not violated.

---

**5.** In making that finding, the trial court stated at the hearing:

"I'm denying your Motion to Strike or Set Aside for Fraud, Mistake, or Irregularity, under 2–535(b). Finding that, that language, the irregularity that's discussed relates to the City's right to recover the deficiency and not the validity of the conveyance."

. . .

"And even if it was an irregularity in the property being advertised, and that all other respects, the procedures required in an ordinary tax sale were met, because I think you need findings of fact, in there too, that the misstatement of the fact that it was a special sale, in that it was not property that was cited under that section relates to the City's right to recover the deficiency."

. . .

"I found that . . . [the] language in that section, deals with the City's right to recover a deficiency, if sold for less than the amount of taxes owed. You see what would happen is to rule otherwise would encourage owners of real property to not pay taxes until that amount exceeded the fair market value of their property . . ."

We shall first address some threshold issues presented at the trial court level in respect to the motions to vacate, which were not resolved due to the trial court's reliance on other reasons in support of its judgment. We shall address the unresolved issues because we necessarily must confront them as they concern a condition precedent to challenging a tax sale where it is conceded that taxes are sufficiently delinquent to authorize a tax sale. *See Brewer v. Brewer,* 386 Md. 183, 872 A.2d 48 (2005). Even though we shall be holding that the condition precedent has not been met, and we shall also hold that appellant waived the issues it now raises in respect to the relevant tax sales, we shall, nonetheless, address the issues actually decided by the trial court because they raise very important issues; issues that will continue to arise in tax sale proceedings, especially in Baltimore City where tax sales are used to address the City's very real problem with abandoned and vacant properties.

Although not presented in the appellant's or the City's briefs, we address the condition precedent issue and we shall also discuss the unresolved waiver issue, both pursuant to Maryland Rule 8–131, which provides in relevant part:

"(a) **Generally.** The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

. . .

"(2) No prior appellate decision. Except as otherwise provided in Rule 8–304(c), when the Court of Appeals issues a writ of certiorari to review a case pending in the Court of Special Appeals before a decision has been rendered by that Court, the Court of Appeals will consider those issues that

would have been cognizable by the Court of Special Appeals."

Judge Raker, writing for the Court in *Jones v. State,* 379 Md. 704, 712–13, 843 A.2d 778, 783 (2004), discussed the second sentence of Rule 8–131(a), opining that:

"The second sentence of Rule 8–131(a) sets forth the general proposition that an appellate court *ordinarily* will not consider an issue that was not raised or decided by the trial court. The plain language of the rule, however, makes clear that the prohibition is not absolute. *See Crown Oil v. Glen,* 320 Md. 546, 561, 578 A.2d 1184, 1191 (1990) (noting that, inasmuch as Rule 8–131(a) employs the term 'ordinarily,' it permits exceptions, and appellate courts have occasionally decided cases on issues not previously raised). The word 'ordinarily' in Rule 8–131(a) anticipates that an appellate court will, on appropriate occasion, review unpreserved issues. This has been the practice of the Maryland appellate courts, as well as of the federal courts and our sister states, dating well before Rule 8–131(a). *See Atlantic Mutual v. Kenney,* 323 Md. 116, 122, 591 A.2d 507, 510 (1991) (noting that Rule 8–131(a) is simply enunciatory of the practice which has existed since 1825); *see also* Annot., *Issue First Raised on Appeal,* 76 A.L.R. Fed. 522 (1986). In *State v. Bell,* 334 Md. 178, 638 A.2d 107 (1994), we concluded:

'It is clear from the plain language of Rule 8–131(a) that an appellate court's review of arguments not raised at the trial level is discretionary, not mandatory. The use of the word "ordinarily" clearly contemplates both those circumstances in which an appellate court will not review issues if they were not previously raised and those circumstances in which it will.'

*Id.* at 188, 638 A.2d at 113. Thus, under the Rule, an appellate court has discretion to excuse a waiver or procedural default and to consider an issue even though it was not properly raised or preserved by a party."

The first sentence of subsection (a) of the rule is as relevant as is the second sentence, especially considering the circumstances at issue in this case.

As this Court has stated before, the primary purpose of the Rule "is 'to ensure fairness for all parties in a case and to promote the orderly administration of law.'" *State v. Bell*, 334 Md. 178, 189, 638 A.2d 107, 113 (1994), (quoting *Brice v. State*, 254 Md. 655, 661, 255 A.2d 28, 31 (1969), quoting *Banks v. State*, 203 Md. 488, 495, 102 A.2d 267, 271 (1954)); *Basoff v. State*, 208 Md. 643, 650, 119 A.2d 917, 921 (1956).

In order to ensure that fairness, Judge Raker for the *Jones* Court stated that "appellate courts should make two determinations concerning the promotion or subversion of 8–131(a)'s twin goals." 379 Md. at 714, 843 A.2d at 784. "First, the appellate court should consider whether the exercise of its discretion will work unfair prejudice to either of the parties" and "[s]econd, the appellate court should consider whether the exercise of its discretion will promote the orderly administration of justice." *Id.* at 714–15, 843 A.2d at 784. In the case *sub judice*, the condition precedent issue appears to have been presented below, but not decided. Because, as explained below, the Circuit Court correctly denied appellant's motions to vacate the judgments based upon statutory provisions, addressing the condition precedent and waiver issues under the Rule does not unfairly prejudice either party. There are no contested facts relating to whether the taxes have, in fact, been paid. All parties to the present appeal agree that taxes have not been paid. By addressing the issue we merely state what the law is, and what the trial court should have found the law to be had it resolved the issue of the "condition precedent." Moreover, it appears that there are literally thousands (5,000 or more) of abandoned or vacant properties creating such severe problems for the City of Baltimore that it is attempting to resolve some of them by the tax sale process. Finally, by resolving the unresolved (but presented below) issue, we thereby promote the orderly administration of justice.

What occurred here may be an unusual attempt to avoid altogether the responsibility of owners to pay property taxes and an attempt to avoid compliance with the requirements imposed upon taxpayers relating to the right to redeem in tax sale cases. In order to redeem, the delinquent taxpayer has to tender all of the taxes, interest and costs of sale to the Collector or to the holder of the certificate.[6] Md.Code (1985, 2001 Repl.Vol.), § 14–828 of the Tax–Property Article.

During the hearing on the motion to vacate the judgments foreclosing appellant's rights of redemption, there was an extensive discussion regarding the amount of taxes owed and the delinquent owner's failure to timely redeem the properties. The following is an excerpt of the pertinent parts of that discussion.

THE COURT: Well how much difference between the taxes owed and the amount paid, was there? Was it an unconscionable difference . . .

[Appellant]: Oh, yes. The taxes owed . . . on the case ending in 62 . . . were $128,000.00, and the non-profit paid $6,400.00 for the property, and the value of the properties were $122,000.00.

THE COURT: And the taxes owed were how much?

[Appellant]: $128,534.70. That's in case ending in 62 [case number 24–C–01–005462].

---

6. If a delinquent taxpayer can find a way to overturn a tax sale without paying the delinquent taxes, the delinquent taxpayer will never redeem. It is for this reason that the general rule is that in order to challenge a tax sale, the payment of taxes in arrears is a condition precedent. It was not met in the case at bar (at one point prior to the judgments, appellant appeared to question the computation of taxes but not that some amount was due. That issue was abandoned and not raised in the case before us.).

The case law that seems to support the right of a taxpayer to proffer a sum (instead of paying it) only relates (if it applies at all) to claims that the purchase price at the tax sale was inadequate. *See Preske v. Carroll, infra,* 178 Md. 543, 550–51, 16 A.2d 291, 295 (1940). It does not change the requirement that in order to challenge the holding of a tax sale, the taxes must be paid as a condition precedent.

. . .

THE COURT: And the amount paid [for the property at the tax sale] was?

[Appellant]: On that one was $6,408.70. And on the other case, Case Number ending in [54]63, I believe if I'm not mistaken that the taxes were $55,020.00 and the Plaintiff paid $2,629.00

. . .

THE COURT: Well is the only reason—what I was trying to get at is the only reason we're here is because your client believes he is liable for the deficiency.

[Appellant]: No, your Honor, we're here because my Client wants the properties and may in fact have something planned to do with the properties and would have done so, but for the fact that the City illegally put these into this tax sale.

THE COURT: What amount would he have had to tender to redeem?

[City]: Your Honor, he would have had to tender the full amount [of] taxes due on the properties. Of course, interestingly, if for some reason we were to vitiate these . . . Judgments, then paradoxically then those obligations . . . plus additional interest . . . *because they have not been redeemed,* and interest continues to accumulate daily. . . .

[Appellant]: And my Client [is] fully aware of that, your Honor, that he's responsible for the taxes, but the point we're here today on is the fact that this sale was illegal. . . .

. . .

THE COURT: So if this were a regular tax sale, the amount involved would have been at that time $128,534.00? [Emphasis added.]

Although appellant acknowledged that it was responsible for the taxes owed, it never, at the hearing or at any other time, directly proffered that it was ready, willing and able to pay the amounts, or to pay undisputed amounts, and, more impor-

tantly, it has not paid any of the delinquent taxes and charges due.

Tax–Property Article, Section 14–828, in relevant part, requires:

" § **14–828 Required payments;** ...

(a) *Payments to collector.*—If the property is redeemed, the person redeeming shall pay the collector:

(1) the total price paid ... together with interest;

(2) any taxes, interest, and penalties paid by any holder of the certificate of sale;

(3) any taxes, interest, and penalties accruing after the date of the tax sale;

(4) unless the party redeeming furnishes the collector a release or acknowledgment executed by the plaintiff or holder of the certificate of sale that all actual expenses or fees ... have been paid to the plaintiff or holder of the certificate of sale, any expenses or fees for which the plaintiff or the holder of a certificate of sale is entitled to reimbursement under § 14–843 of this subtitle; and

(5) for vacant and abandoned property sold under § 14–817 of this subtitle for a sum less than the amount due, the difference between the price paid and the unpaid taxes, interest, penalties, and expenses.

. . .

(c) *Notice to holder of certificate; certificate of redemption.*—**On receipt of the proper amount,** the collector shall notify the holder of the certificate of sale that the property has been redeemed and that on surrender of the certificate of sale all redemption money excluding taxes received by the collector will be paid to the holder." (Emphasis added.)

By attacking the sale procedure in a post-judgment motion to vacate, instead of paying the taxes and charges which it would have been required to do in order to redeem prior to judgment, the taxpayer appears to be seeking to have the title of the property revert back to the delinquent taxpayer without

having to ever redeem by paying the overdue and due taxes. This Court long ago rejected such practices, albeit in an equity case (but an equity case in which the court recognized the requirement of payment as part of the tax sale procedure.). *Stewart v. Meyer*, 54 Md. 454 (1880). In *Stewart*, as similar to the case at bar, the assigns of a delinquent taxpayer filed an injunction after the sale had been ratified, requesting that title to the subject property not be conveyed to the tax sale purchaser because of what they termed procedural irregularities, alleging that the sale had been prematurely held in respect to the published date of the sale. *Id.* at 461–62. The Court determined that the Collector was not allowed to conduct the sale on that particular date and that a delinquent owner normally would have had a right to seek to set aside the sale under some circumstances. *Id.* at 465. Such a right, however, *was predicated upon the payment of all taxes due.* The Court noted:

> "After the final ratification of the sale, two several applications by petition were made to the court, by the present plaintiffs, for review and rescission of its order of ratification, upon the ground of illegality in the proceedings by the collector, and of surprise to the petitioners; but those applications were refused, and the petitions dismissed; and hence the present application by bill to the equity powers of the court.

> . . .

> "If the sale is so fatally defective as to be insufficient to vest a good title to the property in the purchaser, every reason would seem to require that the plaintiffs should have ample and speedy remedy to be relieved of the obstacle created by the collector's proceedings to the full enjoyment of their rights, and that the cloud upon the title to the property should at once be removed. They are interested only in the annual ground rents, and in the estate of the reversion; they are not entitled to the possession, and could not, therefore, sue in ejectment for the recovery of the property. Under the circumstances of this case, without

resort to a proceeding like the present, the parties would be without adequate remedy for relief against the effect of the *prima facie* title in the purchaser. In such cases, equity asserts complete jurisdiction to remove the cloud from the title of the property involved, and to prevent unnecessary and vexatious litigation.

"*But, as a condition upon which this equitable jurisdiction should be exercised, for the relief of the plaintiffs, they should be required to pay, or bring into court to be paid, to the party entitled to receive it, the full amount of the taxes in arrear at the time of the sale by the collector together with the interest accrued thereon to the time of payment, and also all taxes that have subsequently accrued due on the property, with interest; and upon the full payment of such sums, the plaintiffs should then have the relief prayed by them.* This requirement in regard to the payment of taxes is substantially in accordance with what would have been required if the sale, as reported to the Circuit Court of the city, had been excepted to, and had been set aside, and a re-sale made by the collector. Act of 1874, ch. 483, sec. 51. And we think it but right that the relief sought in this proceeding should be granted only on substantially the same terms as those prescribed by the statute, where the sale is set aside by the court to which it is reported. *When, therefore, the plaintiffs pay, or bring into court to be paid, the sums due for taxes, they will be entitled to a decree, declaring the sale, and the order of confirmation thereof, to be null and of no effect, and that the deed of the collector be cancelled;* and they will also be entitled to an account of the ground rents as prayed by them. And to the end that such relief may be afforded, we shall reverse the decree appealed from and remand the cause."

*Id.* at 462, 467–68 (citations omitted) (emphasis added).

Though *Stewart* was decided before the consolidation of the equity and law courts, the Court very specifically based its equity requirement of the payment of taxes as a pre-requisite of seeking equity relief on the fact that had the delinquent taxpayer sought recourse under the tax sale provisions then in

effect, the payment of taxes would have been a prerequisite to maintaining the suit. This was clearly recognized, and stated as the law in *Reth v. Levinson*, 135 Md. 395, 399, 109 A. 76, 77 (1919), a case that proceeded under the tax sale jurisdiction of the court. Referring to *Steuart*, we said in *Reth*, that:

> "[Payment of all taxes] is a proper requirement of one seeking the aid of a Court of Equity, who claims to be the owner of the property. He should at least be required to pay all taxes due and interest before a Court of Equity should exercise its equitable jurisdiction, and JUDGE ALVEY [in the *Steuart* case] called attention to the fact that it was substantially what would have been required if the sale, as reported to the Court, had been excepted to, set aside and a resale made by the collector . . . ."

*Reth*, 135 Md. at 399, 109 A. at 77.

We further acknowledged the *Steuart* language in a case in which the owner of property was alleging that the price bid at a judicial sale was insufficient and we compared that fact to the situation where a delinquent taxpayer had not paid the taxes and charges due on the property. We said in the mortgage foreclosure sale case of *Preske v. Carroll*, 178 Md. 543, 550–551, 16 A.2d 291, 295 (1940), albeit as dicta, that:

> "Moreover, under the maxim that 'he who seeks equity must do equity,' no exceptant to a sale is entitled to obtain the aid of a court of equity unless he offers to pay a higher price for the property, or at least gives assurance that some other person would be likely to do so, even though there may be some irregularity in the conduct of the sale. In this case the appellant has given no assurance that he would bid on the property if sold again. He has made no offer to pay the costs of the proceedings or any expenses of the sale. He has made no promise to pay the interest or taxes in arrears. *For example, in proceedings to vacate tax sales, the complainants are generally required to pay all taxes in arrears at the time of the sale, as well as all taxes subsequently due, as a condition precedent* to the exercise of chancery jurisdiction. *Steuart v. Meyer*, 54 Md. 454, 468. Likewise the court, in foreclosure proceedings, should not set aside a

reported sale and order a resale as a mere experiment, but only when it is reasonably probable that a better price could be obtained at another sale." (Emphasis added.)

In a proceeding where the heir of the delinquent taxpayer sought to redeem within the redemption period, by paying the amount of the taxes, and the tender of taxes was refused in that the tax sale purchaser was attempting to require the redeemer to pay for improvements he had made during the redemption period, we, in rejecting the tax sale purchaser's position, restated the general rule: "So we can definitely state as a corollary that whenever land has been sold at a tax sale, the owner may redeem it only by tendering the full amount of the purchase money and such additional sums to cover interest, penalties, costs and reimbursement for improvements as the statute requires." *Stewart v. Wheatley*, 182 Md. 455, 460, 35 A.2d 104, 107 (1943).

We have never overruled the holding of our cases that where it is admitted (or proven) that there are delinquent taxes due, in order to challenge the holding or ratification of the tax sale or to seek to vacate a judgment of the foreclosure of the equity of redemption, the taxpayer must first pay to the Collector or the certificate holder the total sum of the taxes, interest, penalties and expenses of the sale that are due. While not recently addressed, it remains the law in this State.

Several other states adhere to the principle that, in order to sustain a claim to void a tax sale, the delinquent taxpayer must tender the amount owed in taxes. *Fibelstad v. Grant County*, 474 N.W.2d 54 (N.D.1991); *Ottaco Acceptance, Inc. v. Huntzinger*, 268 Neb. 258, 682 N.W.2d 232 (2004); *Liggett v. Church of Nazarene*, 291 Ark. 298, 300–01, 724 S.W.2d 170, 172–73 (1987) (holding that the property at issue was church property and accordingly exempt from taxes but noting that generally under a statute a claimant must file an affidavit that he has first "tendered ... the full amount of all taxes and costs" in order to challenge the validity of a tax sale); *Kapp v. Vahlberg*, 299 P.2d 159, 161–62 (Okl.1956) (holding that where an actual tender is asserted in the pleadings the timing of the

deposit of the sum is at the court's discretion so long as the sum is deposited before any judgment in favor of the taxpayer is rendered).

The Supreme Court of North Dakota found that a trial court erred when it decided to grant relief to a bank that had successfully challenged a tax sale. *Fibelstad,* 474 N.W.2d at 62. Under North Dakota's tax sale statute, that state's supreme court determined that the lower court was not authorized to proceed against the tax sale purchaser until the person or entity challenging the sale deposited the amount owed with the clerk. The court concluded that although the statute was enacted primarily for the benefit of the county, it was enacted to prevent the challenger of the tax sale from escaping payment of the taxes. The court refused to dismiss the bank's claim completely, stating:

"[W]e have interpreted the statute as a codification for tax title purposes of the equitable principle that one who seeks equity must do equity. In other words, the failure to make the deposit postpones the granting of any affirmative relief to the challenger of the tax title. In the words of the statute, 'the court shall not proceed. . . .' The Bank cannot proceed with the summary judgment until the deposit is made."

*Fibelstad,* 474 N.W.2d at 62 (citations omitted). The Supreme Court of Nebraska has held that under Nebraska Revised Statutes § 77–1844 (Reissue 1996), which provides:

"No person shall be permitted to question the title acquired by a treasurer's deed without first showing that he, or the person under whom he claims title, had title to the property at the time of the sale, or that the title was obtained from the United States or this state after the sale, *and that all taxes due upon the property had been paid* by such person or the persons under whom he claims title as aforesaid." (Emphasis added.)

A person challenging the validity of a tax deed had to pay all taxes before or during the action in which the tax title is challenged. *Ottaco,* 268 Neb. at 262, 682 N.W.2d at 236. In

*Ottaco,* the tax sale purchaser initiated an action to clear the title of the property.[7] A hearing was held on October 30,

7. At one point some title insurance companies required a tax sale purchaser to establish the validity of the title to tax sale property, by filing an additional proceeding (*quia timet* to remove a cloud on title), naming the prior title holder as a defendant. Under our current jurisprudence this should no longer be necessary. In *Lippert v. Jung,* 366 Md. 221, 783 A.2d 206 (2001), we recently stated:

"It must be remembered that although tax sales are concerned with the payment of taxes on land, the issue in most tax sale cases, where the equity of redemption has been properly foreclosed, is almost always a matter of title. It remains our view, and it is the holding of our cases, that a valid tax sale and proper foreclosure of the equities of redemption terminates the prior title, and creates a new title granted by the sovereign.

. . .

"We reiterated what we had said in earlier cases in *Winter v. O'Neill,* 155 Md. 624, 631, 142 A. 263, 266 (1928):

'[Y]et if the tax deed and the proceedings upon which it is based are valid, then from the time of its delivery it clothes the purchaser not merely with the title of the person who had been assessed for the taxes and had neglected to pay them, but with a new and complete title in the land, under an independent grant from the sovereign authority, which bars or extinguishes all prior titles and encumbrances of private persons, and all equities arising out of them. It requires no argument to demonstrate that, when a governmental agency is empowered to levy taxes for the purpose of producing revenue for the support of the government, it is necessary that a method be provided by which the payment thereof may be enforced. When this method is sale at public auction to the highest bidder, it is essential, in order that there may be bidders at such sale, that the purchaser's title be protected, in cases where the statutory essentials of the sale are substantially complied with; otherwise the collection of taxes would be seriously impaired.' . . .

*See also Thompson v. Henderson,* 155 Md. 665, 667, 142 A. 525, 526 (1928).

"We had held twenty-two years before the *Winter* case, almost a hundred years ago, in *Hill v. Williams,* 104 Md. 595, 604, 65 A. 413, 414–15 (1906), where it was argued that an easement on property was not extinguished by a tax sale, that:

'[A]nd if the taxes were not paid it was liable to be sold, even though by such a sale the easement would be destroyed; because the purchaser at a tax sale, when the proceedings are regular, *is clothed with a new and complete title in the land, under an independent grant from the sovereign authority,* which bars or extinguishes all titles and encumbrances of private persons, and all equities arising out of them. These observations dispose of the three objections first mentioned. . . .' "

*Lippert,* 366 Md. at 229–33, 783 A.2d at 210–13 (footnotes omitted).

2002. The delinquent taxpayers paid the taxes on January 24, 2003, and the trial court entered judgment against the tax sale purchaser on January 30, 2003. The Supreme Court of Nebraska reversed the judgment because the payment of the taxes was never submitted into evidence during trial and, as a result, the delinquent owners failed to show that taxes had been paid. *Id.* at 262, 682 N.W.2d at 236.

Some courts view the delinquent taxpayer's failure to pay as a jurisdictional bar upon the courts. In Florida, by statute, the courts do not have jurisdiction to void tax sales when the taxpayer has not paid the amounts due. *United Bhd. of Carpenters and Joiners of Am. v. Graves Inv. Co.,* 153 Fla. 529, 15 So.2d 196 (1943). In reaching this conclusion that court stated:

> "[T]his section 'requires the owner of the property seeking to cancel tax certificates outstanding but alleged to be invalid to pay those taxes legally due which could have been lawfully assessed, "whether such real estate shall have been returned for assessment by the owner thereof or not.'"
>
> "Where this statute is appropriately applicable, a compliance therewith is a condition precedent to the acquisition of jurisdiction by the court to enter a decree cancelling a tax certificate. So since the statute is here constitutionally applicable ... to hold the decree valid without a compliance therewith would in effect frustrate the very purposes for which it was enacted and nullify the very terms thereof, insofar as the parties to this appeal are concerned."

*Id.* 153 Fla. at 533, 15 So.2d at 198 (citations omitted).

In some other states actual deposit of the money owed is not necessary to proceed with the action: "[W]hen tender of the amount due is made in the pleadings, as defendants did in this case, the time of deposit is left to the trial court's discretion, so long as same is deposited prior to rendition of judgment in favor of the party making the tender." *Kapp,* 299 P.2d at 161–62. The Supreme Court of California has held that although the delinquent taxpayer may not quiet his title to property purchased by others at a voidable tax sale

unless he first pays the taxes and is entitled to no relief unless he pays the taxes, the tax sale purchaser may, in some circumstances, nonetheless be precluded from obtaining immediate clear title to the property absent further proceedings. *Newcomb v. City of Newport Beach,* 12 Cal.2d 235, 83 P.2d 21 (1938); *Ditmers v. Rogers,* 100 Kan. 115, 163 P. 795 (1917); *Le Blanc v. Babin,* 197 La. 825, 843, 2 So.2d 225, 231 (1941) (applying a specific constitutional provision that upon the finding of a void tax sale, relief could be granted to the delinquent taxpayer only "upon payment to the [tax sale purchaser] of the amount found to be due").

In *Warn v. Tucker,* 236 Iowa 450, 456, 19 N.W.2d 201, 204 (1945), the Supreme Court of Iowa stated:

" 'The [tax] deed upon its face is valid, and the plaintiff asks a court of equity to set it aside. This should not be done unless the plaintiff is willing and offers to do equity; that is, pay the taxes or amount paid by the purchaser. In aid of this well-established rule in equity public policy may be invoked, for the public welfare requires that taxes should be paid, and that where the owner fails, other persons will do so by purchasing the land when offered for sale by the state and county.... The purchaser should therefore be protected to the extent that the right obtained should not be set aside except on condition of repayment by the owner, provided the taxes have been legally levied, and have not been paid.' "

The Supreme Court of Colorado, upon finding that tax sales were voidable, has required the delinquent taxpayers to deposit in court all the taxes owed plus interest and expenses before granting the delinquent taxpayer any relief. *Blue River Co. v. Rizzuto,* 135 Colo. 472, 312 P.2d 1023 (1957); *Empire Ranch & Cattle Co. v. Lanning,* 49 Colo. 458, 113 P. 491 (1911). In Illinois, the delinquent taxpayer must pay all taxes owed even if the tax sale would otherwise be void. *Kuhn v. Glos,* 257 Ill. 289, 100 N.E. 1003 (1913). Under that state's statute, the court shall order the delinquent taxpayer to pay the owed amount within ninety days from the date the court finds that the tax sale should be vacated. If the owner fails to make the

required payment within that time, the petition to set aside the tax sale must be denied with prejudice and the judgment awarding the tax deed to the purchaser becomes irrevocable. 35 Ill. Comp. Stat. 200/22–80 (1993, 2005 Supp.).[8]

■ In the case *sub judice*, appellant has not paid taxes, interest, penalties and expenses of the sales, yet does not in this appeal challenge the assertion that such charges are, in fact, due. In its brief, appellant suggests that it had at one point secured a purchaser for the property who might pay the taxes. The fact that potential purchasers may exist is not sufficient to satisfy the condition precedent, and, absent actual payment of taxes, is not relevant. We continue to hold that in order to challenge the foreclosure of the equity of redemption in a tax sale, the taxes and other relevant charges acknowledged to be due, either prior to the challenge or simultaneously with it, must, as a condition precedent, be paid. Appellant has not contested the fact that taxes are owed, or in this appeal, the amounts. There is no issue as to his obligation to pay the taxes. If we were to overrule our cases holding that payment is first required, the City would be left where it was before the tax sale. The public would be burdened perpetually with the problems created by the thousands of abandoned properties, which the delinquent owners would be unlikely to ever pay taxes on or ever to rehabilitate.

Appellant failed to satisfy the condition precedent to its rights to seek a vacation of the foreclosure judgments. For this reason alone, appellant is not entitled to prevail in its challenges.

■ In its brief the City also alleges that appellant waived the issues presented in the case *sub judice*. This waiver,

---

8. That statute provides:

"If the payment is not made within the 90–day period, the petition to vacate the order directing the county clerk to issue a tax deed shall be denied with prejudice, and the order directing the county clerk to issue a tax deed shall remain in full force and effect. No final order vacating any order directing the county clerk to issue a tax deed shall be entered pursuant to this subsection (b) until the payment has been made."

according to the City, occurred when appellant waited until after the thirty days available to modify the judgment had elapsed before bringing the issues it now raises as to the properties in this case to the trial court's attention. During the hearing on the motion to vacate the judgments the City consistently pointed to that fact in asking the court to dismiss appellant's motion.

The court at the motion to vacate hearing recognized this issue, stating to appellant: "So now you want me to consider things not originally raised, and I'm willing to do that...." Later in the hearing, the issue was brought up when the court asked appellant whether it had already had an opportunity to redeem. Appellant answered that he had an opportunity to redeem, but had not done so because it believed that all the motions for foreclosure had been dismissed.[9] Appellant's belief, it stated, was based upon the fact that motions to dismiss had been granted as to two of the properties. The City then told the court:

"[T]hat's the reason why we're here today, because only one (1) [property] the one that was filed on originating motion [in one of the cases] was, of course, finally dismissed by [the Circuit Court]. So you had the other ones [in that case] that were still open, ... notice was given about that one dismissal and there wasn't an effort made to correct that...."

Later, the City explained its position during the hearing on the motion to vacate when the court expressed its concern regarding the earlier motion to dismiss, which mentioned only one of the properties in each case:

"Right, but then I would think the Practitioner would have said, well there's a problem here, what about those other 11

---

9. It is interesting to note that, although appellant alleged that it was under the impression that all of the complaints to foreclose had been dismissed, it nonetheless still failed to pay any of the taxes owed on the two properties where the complaints were dismissed or on any of the properties in this case. The record does not reflect that any of the taxes have been paid by appellant. This again demonstrates why payment is a requirement when the delinquent taxpayer is seeking relief.

or 12, or however number there are in these cases, what about those? Filed a Motion to correct the record and get that cleared up, or revise a Motion and that wasn't done, so everybody—[ ] moved along, of course, Baker [ ] relied on the fact there's just one property [dismissed in each of the two cases], and [Baker] gets [its] Judgment and then thirty (30) days go by and it's not until August 2004, I'm not sure when the Judgment date is, but I know it was well past the thirty (30) days. In August, [appellant's counsel], is hired and files this Motion and now I think the analysis becomes, okay, we can't do general revisory power, we do fraud, mistake, and irregularity,.... [Appellant's] representative knew precisely what was going on, because they raised the issue of the violation notice from the outset [as to two of the properties only] and had a timely opportunity to assert their rights, a timely opportunity to correct the record, as I said earlier, a timely opportunity to file a Motion to vacate the judgments, and all of these steps of the proceeding, they failed to do that, and now they're coming in at the proverbial eleventh hour, Judge, and are seeking to do what should have been done well, well, before.[10]

. . .

"And so, one [that] comes in with equity should have clean hands, and that's not the case here. So, for both the equitable perspective, from the perspective of legal issues, [appellant] simply fails at this time to assert its rights in a timely fashion. And, even though Deaner (sic) talks about five years later and all that, it's interesting that [it's] somebody who comes in as the Estate Administrator well beyond the period and says, I'm surprised, I didn't know. [Appellant] knew from the get go, filed [its] Motion, and just didn't follow up with the proper review and procedure to get this thing rectified, and at this point, I think as you said,

---

10. In the transcript, this paragraph is attributed to appellant. It is clear from the context, however, that it was the City that was making these statements.

things are [waivable], and there are also time lines that have to be construed. We didn't keep him in the dark about this. He argued what he needed to argue in front of [the Circuit Court]. He just didn't get the complete relief that he had anticipated. But then that called for further on his part, because we all got [the Circuit Court's] Order.

. . .

"I would agree, if [appellant] was kept in the dark about the violation notices, didn't have the opportunity to kindly present his objection, absolutely, we should be talking about it today, but, your Honor, they had that opportunity and they had the opportunities to revise—we all got the [appellant's] Motion that said it was one property [one property in each case], then when the Certificates came through, the Decrees, rather, they had thirty (30) days again, and so we're missing the boat here, on a number of different time periods that would have been—that are there for [appellant's] benefit. And they just, quite frankly, your Honor, failed to do it. And, I think at this point, there needs to be a finality as they say, to certain—to Judgments and to Decrees, and at this point, I think we're at that stage."

Baker's [the tax sale purchaser] counsel weighed-in on the issue, stating:

"[T]he [appellant] at that point, was only concerned about the deficiencies as to those particular lots and he was aware through Counsel, that the deficiencies if they existed, existed on all of the properties. And so, I would argue that he waived any argument that he would have in terms of the remaining fourteen (14) properties, because he didn't raise it in his Motion."

The court acknowledged the defect. It determined, however, that even if the objection had been raised with respect to the remaining properties, the result would likely be the same:

"Let me say again, the only difference is, they can sell properties regardless of whether or not there's a violation notice, and regardless of whether or not it's abandoned, *as*

*long as taxes are owed.* And, the proceedings otherwise, are the same, except at the end they can turn around to the property owner and say look, you owe us the difference. Had that defense been raised in this case, and he had—your client, had ample opportunity to raise it. If it were in front of me, I would not have dismissed the proceedings. I would have in the Order, that followed, because they did not comply with the requirements, deny them [the City] the right to recover any deficiency." [Emphasis added.]

We believe that the challenges to the foreclosure of the equities of redemption in these cases should have been dismissed on the failure of appellant to satisfy a condition precedent, i.e., to pay the taxes and charges, and we further believe that the present issues were waived by appellant's failure to raise them sufficiently prior to judgment as to the specific properties at issue here. We shall, however, for the reasons hereafter stated, address the issues actually resolved by the trial court for guidance in the thousands of future cases that might be filed.

As to the issues the trial court did resolve, we agree with his assessment that the City's failure to cite the properties only prevents recovery of the deficiency from the delinquent taxpayer. Section 14–817(c) of the Tax–Property Article under these circumstances does not prohibit the sale of the property in question.

## II. Standard of Review

■ Maryland Code (1973, 2002 Repl.Vol.), § 6–408 of the Courts and Judicial Proceedings Article ("C.J."), Maryland Code (1985, 2001 Repl.Vol., 2005 Supp.), § 14–845(a) of the Tax–Property Article ("T.P."), and Maryland Rule 2–535, govern the ability of the trial courts to review their own judgments. Under the trial court's general review power as provided by Rule 2–535 and C.J. § 6–408, when a party files a motion to set aside a judgment more than thirty days after the judgment is entered, the grounds for setting aside the judgment are generally limited to instances of fraud, mistake or irregularity. In reviewing the decision below, "the only issue

before the appellate court is whether the trial court erred as a matter of law or abused its discretion in denying the motion." *In re Adoption/Guardianship No. 93321055/CAD,* 344 Md. 458, 475, 687 A.2d 681, 689, *cert. denied sub nom. Clemy P. v. Montgomery County Dep't of Soc. Servs.,* 520 U.S. 1267, 117 S.Ct. 2439, 138 L.Ed.2d 199 (1997).

In the context of tax sales, a judgment foreclosing an owner's right of redemption can be reopened, after thirty days have passed, on the grounds of lack of jurisdiction or fraud. T.P. § 14–845(a).[11] In addition, if the party seeking that the judgment be vacated bases its position on grounds of constructive fraud, the claim must be filed within one year from the date of judgment. *Id.* Although we have not previously stated the standard of review of a lower court's decision under this section, it stands to reason that the same standard used in reviewing decisions under C.J. § 6–408 and Rule 2–535(b) should be applied. The Rule and both statutes deal with the ability of the trial court to review its judgments.

### III. Discussion

Appellant argues that the original tax sale was void at the time it took place because the properties were not vacant and the City of Baltimore failed to cite the properties as required under T.P. § 14–817(c), discussed *infra.* In appellant's view the City could not legally include its properties in the tax sale as a result of the defect, therefore, the Circuit Court lacked jurisdiction to foreclose the right of redemption. In the alternative, appellant argues that the tax sale was void due to

---

11. We have previously recognized that there may be a conflict between C.J. § 6–408 and T.P. § 14–845, which at the time was Maryland Code (1957, 1975 Repl.Vol.), Article 81, § 113. *Suburban Dev. Corp. v. Perryman,* 281 Md. 168, 169 n. 1, 377 A.2d 1164, 1164 n. 1 (1977) (per curiam) (stating that the conflict between these two statutes "should be considered in light of our ruling in *Owen v. Freeman,* 279 Md. 241, 367 A.2d 1245 (1977)"). In *Freeman,* the Court held that Rule 625, which has since been reclassified as Rule 2–535, applies to all final judgments. *Freeman,* 279 Md. at 245, 367 A.2d at 1248. In the case at bar, there is no conflict as appellant claims that the judgment should be set aside because of fraud.

constructive fraud and that the Circuit Court erred in denying its motions to dismiss (vacate) the judgments foreclosing appellant's right of redemption as to the properties that remain at issue. Under the particular circumstances of this case, we agree with the Circuit Court that the City of Baltimore complied with all of the essential requirements under the Tax–Property Article of the Maryland Code to conduct a general tax sale including (or limited to) the subject properties. Therefore, appellant's motion to vacate the judgment foreclosing its right of redemption based on this issue was properly denied.

## A. Tax Sales

■ In order to sell property at a tax sale, the City must comply with a number of requirements, the first of which is that the owner must owe taxes on the property.[12] *Kaylor v. Wilson*, 260 Md. 707, 273 A.2d 185 (1971); *Bugg v. State Roads Comm'n*, 250 Md. 459, 243 A.2d 511 (1968); *Mullen v. Brydon*, 117 Md. 554, 83 A. 1025 (1912). The City must notify all other taxing agencies that a tax sale will be held. T.P. § 14–810. Thirty days prior to the first advertisement for the tax sale, notice must be mailed to the owner. T.P. § 14–812. The notice must state the name of the person, the amount of taxes due, and include a standard statutory notice. *Id.* Then, the City must advertise the tax sale once a week for four successive weeks in one newspaper of general publication. T.P. § 14–813. Once all of these steps have been completed

---

12. Appellant has argued that the properties were sold at a "special" tax sale. In our review of the Tax–Property Article sections 14–806 through 14–854, governing tax sales, we have not found any mention of a "special," or for that matter a "regular," tax sale. These two terms most likely stem from the practice by the City of Baltimore, as well as other jurisdictions, of holding a tax sale on one specific date every year. In practice, the City, generally, may not have sold abandoned property on that date although it could have so far as the State statute is concerned. As a result, one may incorrectly assume—as the appellant apparently did in this case—that only abandoned properties may be sold at a different date than the one designated by the City as the "regular" tax sale date. As explained below, so long as the City complies with the statutory requirements to conduct a general tax sale, it can do so at any time.

the sale may proceed pursuant to T.P. § 14–817. All these requirements were met in the case at bar.

 At the center of this case lies our interpretation of T.P. § 14–817 and whether the City may sell the delinquent property for an amount less than that owed in taxes, interest and expenses. The process of statutory interpretation always begins " 'with an analysis of the language of the statute.' " *Sweeney v. Sav. First Mortgage, L.L.C.*, 388 Md. 319, 326, 879 A.2d 1037, 1041 (2005) (quoting *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 603 (4th Cir.1999), *cert. denied*, 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000)). The Court must determine whether the plain language of the statute is clear and unambiguous. *Id.; Davis v. Slater*, 383 Md. 599, 604–05, 861 A.2d 78, 81 (2004). The statute is ambiguous when there appear to be two or more reasonable alternative interpretations of its language. *Stanley v. State*, 390 Md. 175, 887 A.2d 1078 (2005); *Greco v. State*, 347 Md. 423, 429, 701 A.2d 419, 421 (1997). If the language is ambiguous, we must "look beyond the statute itself and into the legislative history for guidance as to the intent of [the Legislature] in passing the statute." *Sweeney*, 388 Md. at 327, 879 A.2d at 1041; *Davis*, 383 Md. at 605, 861 A.2d at 81. As Judge Battaglia stated for the Court: "[T]he goal of our examination is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by [the] particular provision. . . ." *Davis*, 383 Md. at 605, 861 A.2d at 81.

The version of this section in effect at the time of the tax sales provides in pertinent part: [13]

"§ **14–817. Sale at public auction.**

. . .

(b) *Sales price.*—(1) Except as provided in subsection (c) of this section, *property may not be sold for a sum less than*

---

**13.** There have been some changes to this section since the time the tax sale took place in 2001. These changes will be addressed where relevant to the case *sub judice*.

*the total amount of all taxes* on the property that are certified to the collector under § 14–810 of this subtitle, together with interest and penalties on the taxes and the expenses incurred in making the sale, and the lien for the taxes, interest, penalties, and expenses passes to the purchaser.

. . .

(c) *Baltimore City.*[14]—(1) In Baltimore City, abandoned property consisting of either a vacant lot or improved property cited as vacant and unfit for habitation on a housing or building violation notice *may be sold for a sum less* than the total amount of:

(i) all taxes on the property that are certified to the collector under § 14–810 of this subtitle;

(ii) interest and penalties on the taxes; and

(iii) expenses incurred in making the sale.

. . .

(3) *The person responsible for the taxes prior to the sale shall remain liable to the collector for the difference between the amount received in the tax sale under this section and the taxes, interest, penalties, and expenses remaining after the sale.*

. . .

(5) In a proceeding to foreclose the right of redemption under this subtitle, the complaint shall request a judgment for the city in the amount of the balance.

. . .

(7) The Mayor and City Council *may* institute a separate action to collect the balance at any time within 7 years after

---

**14.** The words *"Baltimore City"* were not part of the statute. They were added by the codifiers.

the tax sale if the plaintiff is a private purchaser." (Some emphasis added.) [15]

In appellant's view, the City does not have the authority to sell the properties for an amount less than that owed, unless it properly cites them as vacant or abandoned. Our interpretation of the statute, in light of the legislative intent supporting the enactment of subsection (c), does not yield such a result.

Before proceeding further we address an initial misinterpretation of the statute by appellant. During oral argument counsel for appellant contended that § 14–817(c) was not part of the general tax sale statute but a specific section dealing with a specific type of sale, and that as a result, any sale to be conducted in that manner was subject to the citation requirements of § 14–817(c). Appellant's counsel relied specifically on the headings of the subsection as they appeared in the appendix to his own brief, which read:

### *"TAX–PROPERTY ARTICLE— § 14–817*

§ 14–817(c). *Sale at public auction*

(c) Baltimore City.

(1) In Baltimore City . . ." (Emphasis added.)

---

**15.** The relevant portions of Chapter 603 of the Acts of 1992 provide:
(C) (1) IN BALTIMORE CITY, PROPERTY CITED AS VACANT AND ABANDONED ON A HOUSING OR BUILDING VIOLATION NOTICE MAY BE SOLD FOR A SUM LESS THAN THE TOTAL AMOUNT OF:
(I) ALL TAXES ON THE PROPERTY THAT ARE CERTIFIED TO THE COLLECTOR UNDER § 14-810 OF THIS SUBTITLE;
(II) INTEREST AND PENALTIES ON THE TAXES; AND
(III) EXPENSES INCURRED IN MAKING THE SALE.
(2) THE PERSON RESPONSIBLE FOR THE TAXES PRIOR TO THE SALE SHALL REMAIN LIABLE TO THE COLLECTOR FOR THE DIFFERENCE BETWEEN THE AMOUNT RECEIVED IN THE TAX SALE UNDER THIS SECTION AND THE TAXES, INTEREST, PENALTIES, AND EXPENSES REMAINING AFTER THE SALE.
(3) THE BALANCE REMAINING AFTER THE TAX SALE SHALL BE INCLUDED IN THE AMOUNT NECESSARY TO REDEEM THE PROPERTY UNDER § 14-828 OF THIS SUBTITLE.
(4) IN A PROCEEDING TO FORECLOSE THE RIGHT OF REDEMPTION UNDER THIS SUBTITLE, THE COMPLAINT SHALL REQUEST A JUDGMENT FOR THE *CITY* IN THE AMOUNT OF THE BALANCE OTHERWISE DUE UNDER THIS SECTION.

The title *"Sale at public auction,"* inserted after the section number 14–817(c) in appellant's appendix to its brief, does not exist. By affixing the language "Sale at public auction" to § 14–817(c) in its appendix and then arguing that the section required a "special" tax sale, relying in part on that title improperly inserted in appellant's appendix, appellant has created a misleading inference.

In the statute itself, section 14–817(c) has no title. Subsequently, the codifiers added "Baltimore City." Appellant added to the copy of the statute in its appendix the words *"Sale at public auction"* and then at oral argument stated:

> "But the sale itself is different than the regular tax sale. A regular tax sale is held a certain times of the year. This was a special tax sale held specially pursuant to the specific statute that allows a special tax sale. And that statute says that you can't include properties in an special tax sale unless it's an abandoned property that is either a vacant lot or an improved property that is unfit for habitation and has been cited as such on a violation notice.

. . .

> "817(c) deals specifically, only with Baltimore City.

. . .

> "817(c) (1) in Baltimore City, abandoned property consisting of either a vacant lot or improved property cited as vacant and unfit for habitation on a housing or building violation notice may be sold for a sum less . . .

. . .

> "If I may respectfully disagree on this point, if you look at the heading for 817(c) it is not a continuation of the general tax statute. **It says "sale at public auction," and it is talking about a specific kind of auction.** It is not part of the general tax sale, 817 the heading of that section says: 'sale at public auction, Baltimore City,' and it talks specifically about a sale by Baltimore City for these properties.

This is not just a continuation of the general tax sale, this is a specific section dealing with a specific auction for a specific municipality, under specific circumstances.

. . .

"[Y]es there were taxes due, but 817(c) is a specific section, for a specific municipality, for specific properties. And in this case the City did not comply with this in any manner whatsoever. . . ." [Emphasis added.]

There is only one type of tax sale governed by section 14–817, of which part (c) is only a subsection, not a separate tax sale provision.

As we have stated, the language relied upon by appellant in support of its argument does not exist. To the extent appellant's argument relies on that erroneously inserted title, the argument fails. The statute does not require a special tax sale (at one point, however, the Deputy Mayor of Baltimore testified before a legislative committee during a subsequent modification hearing that "the law has embodied the basic concept of a separate sale. . . ." Letter from Jeanne D. Hitchcock, Deputy Mayor, Baltimore City, to Members of the House Ways and Means Committee (Mar. 28, 2000)). The Mayor and City Council of Baltimore may have adopted a practice of separate sales, but the practice is not embodied in the statute at issue.

As stated, section headings and subheadings are usually added by the codifiers as an aid for the interpretation of the statutes. Unless those headings are part of the body of the statute, however, they do not have the force of law as they were never approved by the legislative body. While titles, headings and subheadings can shed light on legislative intent, normally they will only do so when they are part of the process of enacting the statute by the Legislature. *See Stouffer v. Pearson,* 390 Md. 36, 46, 887 A.2d 623, 629 (2005); *Davis,* 383 Md. at 605, 861 A.2d at 81. And, as noted, the title language relied on by appellant does not exist in the statute, or in the codification of the statute.

Section 14–817(c) provides that, in Baltimore City, "a vacant lot or improved property cited as vacant ... may be sold for a sum less than the total amount [owed]. ..." This section can reasonably be interpreted in two different ways. As appellant contends, under one of such interpretations, the City would be barred from conducting any tax sale at all if the properties are abandoned or vacant and it fails to adequately cite the properties. A second interpretation, one noted by the trial court, which we are adopting, is that the City is allowed to conduct the sale under its general tax sale process, but its failure to properly cite the properties prohibits the City from collecting the difference between the purchase price and the amount owed in taxes from the person who owned the property prior to the tax sale, that is to say there could be no deficiency judgment.

In order to resolve this apparent ambiguity, we first look at the statutory framework under which § 14–817 was enacted. In 1942, the Research Division of the Maryland Legislative Council wrote a report entitled "Tax Sales in Maryland, Research Report No 14." In the report, the Council determined that the lack of uniformity in the procedures involving tax sales created great confusion and uncertainty with regards to the rights of the tax sale purchasers. Due to that uncertainty, purchasers were not eager to buy property at tax sales and title insurance companies were refusing to guarantee titles of tax sale property. As a result, the Council concluded that the tax sale procedures should be simplified and standardized.

A year later, the Legislature enacted Chapter 761 of the Acts of 1943, which provided:

"81. SALE AT PUBLIC AUCTION. The sale shall be held on the day and at the place stated in the notice by advertising. The sale shall be held in the County in which the land to be sold is located. If the sale cannot be completed on such day, the Collector shall continue the same from day to day until all property included in the sale is sold. All sales shall be at public auction to the highest bidder, in fee or leasehold, as the case may be. *No property shall be sold for a*

*sum less than the total amount of all State and County taxes due thereon,* and such other taxes as have been certified to the Collector under the provisions of Section 74 hereof, together with interest and penalties thereon and the expenses incurred in making the sale, and the lien for the same shall pass to the purchaser." (Emphasis added.)

The law was codified as Maryland Code (1951), Article 81, § 79, and later as Maryland Code (1957), Article 81, § 80 without any substantive modifications. Then, in 1985, the General Assembly enacted the Tax–Property article, adopting § 79 to be codified as § 14–817, without any changes relevant to this case. Chapter 8 of the Acts of 1985.

Almost fifty years after the initial passage of the statute, the City of Baltimore found itself at an impasse because of the provision emphasized above that properties could not be sold for less than the amount of delinquent taxes. There were a significant number of properties whose values were far less than the amount owed in taxes. Purchasers would not buy the properties for the amount of taxes owed, and the City was not allowed to sell them for a lesser amount. Accordingly, the delinquent property owners just kept owning and operating the properties without paying taxes. Each year the tax arrearage increased and made it even more difficult to sell the properties at tax sales. This created more abandoned properties and less habitable properties. If the owners improved the properties, they could possibly appreciate in value to the point at which they could be sold at tax sale. So, apparently, they were not being improved. As a result, House Bill 1251 was introduced in 1992 creating an exception for Baltimore City from the requirement that the properties be sold at no less than the amount owed in taxes, interest and expenses. This was the purpose of the legislation.

In support of the bill, Robert W. Hearn, the Commissioner of the Department of Housing and Community Development for Baltimore City, testified before the House Ways and Means Committee on March 4, 1992. He provided the following description of the situation:

"The kind of damage that an abandoned house inflicts on its neighborhood is well known. There is nothing that contributes so swiftly or substantially to neighborhood decline as an abandoned house, whether it's boarded up or left wide open to passersby. An abandoned house guarantees a drop in area property values, and consequently, a drop in the City's tax base. It collects trash and harbors rats; it attracts criminals—vandals and arsonists and drug dealers and other people engaged in dangerous and detrimental activity. The vacant property thus precipitates and contributes to a spiralling decline in the quality of urban life throughout the neighborhood.

"The rate of abandonment is increasing while the resources available to us for mounting any kind of effective resistance are shrinking. It is absolutely imperative, therefore, that we develop new approaches aimed at removing government obstacles and facilitating private rehabilitations. House Bill 1251 represents just such an approach by amending provisions in the tax sale process.

"Ironically, the tax sale process—which should be providing a routine mechanism for moving abandoned property into the hands of rehabbers—has become a major obstacle. As abandoned properties continue to deteriorate, the City must periodically respond to neighborhood requests for help in regard to the numerous crises that inevitably arise. For instance, we bait for rats, or replace window boards torn off by vandals, or remove the truckloads of garbage and trash that accumulate in the yard. The expenses of each intervention are posted as a lien against the property. These liens are equivalent to taxes. Therefore, when the property comes up next for tax sale, a private purchaser must pay all of these maintenance and repair costs in addition to the amount of the assessed tax. Because an abandoned property is worth very little to begin with, these tax liens can quickly outstrip its value. When this happens, of course, there will be no private purchaser at the tax sale. With no new responsible owner, the property continues to deteriorate and continues to accumulate additional emergency re-

pair liens until it is again returned to a tax sale to repeat the process. In Baltimore City, tax sale certificates on this kind of vacant property expire in a year. When there has been no private purchaser within one year, or no foreclosure, the property simply goes into the next year's sale.

"House Bill 1251 restores the tax sale as a valuable tool for both tax collection and property acquisition by would-be rehabbers. It lets the City do what any private mortgage holder can do in a foreclosure sale—that is, sell off the property for its market value and *then get a judgment for the deficiency.* By providing for a deficiency judgment, the bill discourages abandonment. Currenty [sic] owners will know that they cannot so easily walk away and expect the city to pick up the tab. And by providing for a market-value transfer, the bill will facilitate many title transfers that are now out of the question.

"The approach taken by this bill is a breakthrough in our long battle against abandoned property. We ask you to support House Bill 1251 in order to turn the tax sale into part of the solution instead of what is now—a large part of the problem." (Emphasis added.)

Subsequently, the Department of Fiscal services issued a fiscal note on the bill which stated:

"While this bill would allow the tax sale of property for less than the total amount of the debts against the property, the bill also provides that any shortfall resulting from the sale of the property for less than the debts against the property would remain a liability of the owner in the amount of the shortfall. Any shortfall resulting from the sale of the property for less than the debts against the property could still be collected via the owner of the property. Consequently, the City should neither gain nor lose under this bill, only, collect monies owed to it sooner than would be realized under the normal collection process."

Another fiscal summary also sheds light on the fact that the legislature's main concern was to allow the City to dispose of the vacant properties contributing to the decline of some of its

neighborhoods at less than the amount of taxes owed. That summary provided:

"The City may be able to collect some monies faster by the process allowed by this bill. Also, some properties are 'unsellable' at the rate needed to pay of all debts—being able to sell at a lower price might allow the City to collect a portion of these debts that *would otherwise be unreachable.*" (Emphasis added.)

Such language demonstrates that the Legislature was fully aware that the City might never be able to find tax sale purchasers, or to collect the taxes owed on certain properties, under the then-existing statutory scheme.

Another important clue in ascertaining that it was the Legislature's intent that the primary purpose of the bill was to permit the City to sell properties for less than the taxes due can be gathered from the Floor Report of the Senate Budget and Taxation Committee, which expressly provided that "[t]his bill authorizes Baltimore City to sell certain abandoned property at a tax sale for less than the sum [owed]. . . ." The floor report does not make any mention as to limits on the application of this section. It further provided, moreover, that "[t]he only impact upon City revenues under this Act would be the expedited collection of certain monies owed the City." The bill passed on a 40 to zero vote in the Senate and on a 126 to zero vote in the House of Delegates, and was enacted in Chapter 603 of the Acts of 1992.

The stated purpose of the law in the enacted statute states:

"FOR the purpose of authorizing certain abandoned property in Baltimore City to be *sold for a sum less* than a certain amount otherwise due for tax sales; specifying that certain persons responsible for certain taxes prior to the tax sale of certain properties remain liable for certain unpaid taxes and other amounts; *requiring certain persons to pay certain unpaid taxes in order to redeem certain property;* requiring complaints in certain proceedings to foreclose redemption rights to make a certain request; *limiting the effect of certain judgments;* requir-

ing certain orders in certain proceedings to foreclose redemption rights to include a certain judgment; and generally relating to tax sales of abandoned property in Baltimore City."

Chapter 603 of the Acts of 1992 (some emphasis added). The new statute also amended §§ 14–828, 14–835, and 14–844 to the extent that they relate to properties sold under § 14–817 for an amount less than the taxes owed.

In 1998, the Legislature rewrote § 14–817, leaving subsection (c) unaltered. Chapter 326 of the Acts of 1998. The new sections spelled out the conduct of the tax sale under subsection (a) and the purchase price under subsection (b). Then, in the Acts of 2000, the Legislature enacted Chapter 408 in which it added subsection (c)(7) stating that "[t]he Mayor and City Council *may* institute a separate action to collect the balance at any time within 7 years after the tax sale if the plaintiff is a private purchaser [as opposed to a governmental or charitable entity]." (emphasis added). This section gave the City authority to pursue a separate action against the original owner (as opposed to a judgment in the redemption action), showing once again that the Legislature intended to give the City the ability to solve the problem.[16]

---

**16.** Since the time of the tax sale in the present case, the Legislature has further amended subsection (c) to give even more discretion to the City. In 2003, the Legislature amended subsection (c)(5), which had stated: "In a proceeding to foreclose the right of redemption under this subtitle, the complaint *shall* request a judgment for the city in the amount of the balance." (Emphasis added). The amendment replaced the word "shall" for "may," giving the City discretion on whether to pursue an action to obtain the tax balance from the original owner.

In support of this amendment the City continued to emphasize the extent of the problem. On March 6, 2003, Michael Bainum, the Director of Project 5000, testified before the House Ways and Means Committee and stated:

"... Project 5000[is] Mayor O'Malley's initiative to acquire and clear title to 5000 of the nearly 25,000 vacant and abandoned properties in Baltimore City. As the City's primary acquisition method for this initiative, tax sale foreclosure is a critical tool for reclaiming the thousands of abandoned properties that undermine the City's health and revitalization efforts. By year's end, we aim to process 3000 tax sale foreclosure cases-a volume of cases that speaks to both the

If appellant's contention is that abandoned and vacant properties cannot be sold unless cited as such were to prevail, such properties, absent such citation, could not be sold at all irrespective of the existence of delinquent taxes. Abandoned or vacant properties would be afforded more, not less, protection than unabandoned, occupied properties. That certainly was not the intention of the Legislature.

The only reasonable interpretation, that made by the trial court, is that the citation provisions are linked only to the ability of the City to seek judgments for deficiencies as against the delinquent taxpayers. Otherwise, so long as taxes are overdue, and not paid prior to the judgment of foreclosure, such properties may be sold, albeit that the City may not seek deficiency judgments absent the citations.

It is clear, therefore, that the Legislature did not intend to restrict the City's ability to dispose of these types of properties at tax sales. On the contrary, the statute was specifically enacted to allow such sales. It is in this context that we now turn to the question of the Circuit Court's jurisdiction to issue a judgment foreclosing appellant's right of redemption.

## B. Jurisdiction

We recently addressed the jurisdiction of the Circuit Court in foreclosure proceedings in *Royal Plaza Community Ass'n, Inc. v. Bonds,* 389 Md. 187, 884 A.2d 130 (2005). As discussed in *Royal Plaza:* " '[T]he legislature has declared that the public interest in marketable titles to property purchased at tax sales outweighs considerations of individual hardship in every case, except upon a showing of lack of jurisdiction or fraud in the conduct of the foreclosure.' " *Id.* at 192, 884 A.2d at 133 (quoting *Thomas v. Kolker,* 195 Md. 470, 475, 73 A.2d 886, 888 (1950)). This legislative intent is reflected in §§ 14–808 through 14–854 of the Tax–Property Article, which govern tax sales, and more specifically § 14–832

---

enormity of the problem and the Mayor's commitment to its resolution. In planning for this Project, we have identified some legal barriers that are easily correctible."

which states that: "The provisions of §§ 14–832.1 through 14–854 of this subtitle shall be liberally construed as remedial legislation to encourage the foreclosure of rights of redemption by suits in the circuit courts and for the decreeing of marketable titles to property sold by the collector."

The Tax–Property Article specifically confers jurisdiction upon the Circuit Court over foreclosure proceedings in § 14–834, which provides:

"The circuit court, on the filing of a complaint to foreclose the right of redemption, has jurisdiction to give complete relief under this subtitle, in accordance with the general jurisdiction and practice of the court, and with all laws and rules of court that relate to the circuit courts for the county in which the property is located, except as otherwise provided in this subtitle, to bar all rights of redemption and to foreclose all alienations and descents of the property occurring before the judgment of the court as provided in this subtitle and all liens and encumbrances on the property, except property taxes that arise after the date of sale, and to order an absolute and indefeasible estate in fee simple or leasehold to be vested in the holder of the certificate of sale."

Under this Article, once the Circuit Court enters a judgment foreclosing the right of redemption in a tax sale foreclosure proceeding, that judgment can only be reopened—more than thirty days after it is entered—in accordance with § 14–845, which states:

"(a) *Reopening judgments generally.*—A court in the State may not reopen a judgment rendered in a tax sale foreclosure proceeding except on the ground of *lack of jurisdiction or fraud in the conduct of the proceedings to foreclose;* however, no reopening of any judgment on the ground of constructive fraud in the conduct of the proceedings to foreclose shall be entertained by any court unless an application to reopen a judgment rendered is filed within 1 year from the date of the judgment." (Emphasis added.)

Appellant claims that failure to strictly adhere to the statutory provisions voids the sale and, consequently, the Circuit Court

lacked any jurisdiction to foreclose the owner's right of redemption.

In support of this assertion, appellant takes us back to the case of *Polk v. Rose*, 25 Md. 153, 159 (1866), where the Court stated:

"To sustain the power of the collector which is a specially delegated one and must be strictly pursued[, a] series of the acts preliminary in their character, are required by law to precede the execution of the power. Each and every step, from the assessment of the property for taxation, to the consummation of the title by delivery of the deed to the purchaser, is a separate and independent fact. All of these facts from the beginning to the end of the proceeding must exist, and if any material link in the chain of title is wanting, the whole is defective for want of sufficient authority to support it. The party claiming under the power is chargeable with notice of every irregularity in the proceedings of the officers, and the *onus* is upon him to show the faithful execution of the power." (Citations omitted.)

In that case, the Collector did not attempt to first collect the taxes from the owner's personal property as required at the time, but sold the real property at a tax sale instead. In doing so, the Court found that the Collector had not met the specific requirements then existing.[17] One of those requirements was the filing of a statement with the court attesting to the fact that the taxpayer did not have any personal property that could cover the amount owed. The Collector failed to file the statement and the owner, in fact, "had personal property amply sufficient to pay the taxes alleged to be due." *Id.* at 160. Furthermore, the Collector sold the two properties on the lot when selling one alone would be sufficient to cover the amount owed.[18] The tax sale purchaser obtained the property

---

17. Tax sales in 1866 were governed by Maryland Code (1860), Article 81, §§ 47–64.

18. At that time the Collector was allowed to divide the lot and sell only enough property to cover the amount owed. Art. 81, § 60.

under a decree by the Circuit Court for Baltimore City. Subsequently, the delinquent owner sold the property to another, who in turn filed a complaint in the Circuit Court for Baltimore City seeking that the court clear the title to the property. The Circuit Court held a hearing and declared the tax sale deed null and void. *Id.* at 159. The Court of Appeals did not address whether the Circuit Court had jurisdiction to foreclose an owner's right of redemption, but it affirmed the Circuit Court's finding that the sale was void.

Appellant argues that the City's failure to cite the properties as abandoned or vacant voids the sale in this case and therefore removes jurisdiction from the Circuit Court to issue a judgment foreclosing the right of redemption. In appellant's case, however, the City's actions do not amount to the type of conduct presented in *Polk,* where the statute required that as a condition precedent to a tax sale of real property, personal property be sold first to satisfy the lien. Sufficient personal property existed in that case. *Polk,* 25 Md. at 160; Md.Code (1860), Article 81, § 50. Accordingly, there was never any jurisdiction to sell the real property in *Polk* because the condition precedent had not been met. In the present case, once the taxes on the real property were not paid, jurisdiction existed for the sale of the real property. How the sale was conducted is a different issue; in this case not a jurisdictional issue.

In a case very similar to the one at bar, *Thomas v. Kolker,* 195 Md. 470, 73 A.2d 886 (1950), the Court denied the delinquent owner's request to reopen foreclosure proceedings because of her mistaken belief that the properties sold at the tax sale were unimproved. On April 8, 1943, the City of Baltimore sold three of Thomas's lots at a tax sale because she had failed to pay taxes for the previous four years. After the sale, Thomas promptly redeemed one of the lots under the mistaken belief that the building, which she wanted to keep, was located on that lot alone, when in fact the building expanded over two of the lots. Kolker subsequently filed a claim to foreclose Thomas's right of redemption as to the other lots. Thomas did not answer the complaint, although she had been

properly served with process. As a result, the Circuit Court entered judgment foreclosing her right of redemption to the two remaining lots. Almost three years later, Thomas filed a petition to reopen the foreclosure proceedings based upon lack of jurisdiction and fraud. The Court held that the Circuit Court had jurisdiction over the matter. In making its determination the Court said:

"The appellant acted, or failed to act, under a mistake of fact as to the location of the garages she erected, a mistake evidently shared by the Collector at the time the property was advertised and sold, although the true situation seems to have been known to him when the certificate was issued. Even if the mistake was mutual it manifestly could not affect the jurisdiction."

*Id.* at 475–76, 73 A.2d at 888. The Court then affirmed the Circuit Court's denial of Thomas's request for relief stating:

"The initial mistake was clearly hers, in building the garage where she did and, as the chancellor states: 'she stood by at the tax sale, she stood by when she redeemed one lot, she stood by when the bill of complaint was filed and served on her, and waited all this period of time before doing anything.' We think the case is not within the exceptions in the statute."

*Id.* at 476, 73 A.2d at 889. In the case *sub judice*, appellant stood by at the tax sale, it had the opportunity to contest the sale and did so successfully on two of the properties sold; in so far as the record before us indicates, appellant did not contest the validity of any of the other sales by a motion to dismiss as to those properties and/or did not then raise the issues as to these parcels it now raises. Rather, it waited until after the judgments foreclosing the equities of redemption had been entered to complain on these grounds. Such failure to timely raise the issues below normally would bar appellant from bringing them at this stage of the proceedings.

Some years later, the Court again visited the question of the jurisdiction of the Circuit Court in foreclosure proceedings involving defective descriptions of the property sold at a tax

sale in *Thomas v. Hardisty*, 217 Md. 523, 143 A.2d 618 (1958). The Court determined that the Circuit Court lacked jurisdiction to foreclose the right of redemption because the property was improperly described throughout the proceedings. Importantly, the Court also pointed out that "[t]here was no personal service on the appellant or actual notice to him of the proceedings, and hence he had no opportunity to correct the clearly wrong description." *Id.* at 534–35, 143 A.2d at 624. In the case *sub judice*, the appellant had every opportunity to raise the issues it now raises in this appeal at any time before the judgment was entered, which it failed to do. And, inaction by the owner has been grounds for a denial of a motion to reopen foreclosure proceedings. In *Hauver v. Dorsey*, 228 Md. 499, 180 A.2d 475 (1962), the Court determined that a purchaser's failure to file an affidavit as required by the Rules did not deprive the Circuit Court of jurisdiction to issue a judgment foreclosing the right of redemption. Hauver had received the property by will and failed to pay taxes on it. The property was sold at a tax sale seven years after the death of the original owner who was still the title holder according to the land records. All notices sent to the address of record were returned and the Circuit Court entered a decree foreclosing the right of redemption on the property. A year later, Hauver filed a petition to set aside the judgment, which was denied. In affirming that denial, the Court stated:

"We have frequently pointed out that the tax sales law was designed to improve the marketability of tax titles. Petitioner was less than diligent in failing to ascertain that taxes were in default, that the sale had been made, and a proceeding to foreclose instituted. We see no reason to hold that a procedural requirement, designed to prevent imposition upon the court and require a reasonable effort in good faith to locate and warn the owner, creates a jurisdictional defect in the fundamental sense of preventing the court from dealing with the subject matter and the parties before it."

*Id.* at 505, 180 A.2d at 478 (citations omitted). In the case *sub judice*, we see no reason to hold that the citation of the

properties, which—as explained *supra*—is only a requirement to be able to collect from the delinquent taxpayer the difference between the sale price and the amount of the lien, creates a jurisdictional defect preventing the Circuit Court from foreclosing the owner's right of redemption on the property. As an active participant in the proceedings, appellant could have—at anytime before the judgment was entered—paid the taxes and redeemed the property.

### C. Constructive Fraud

In the alternative, appellant argues that the City's failure to cite the properties amounted to—at the very least—constructive fraud.[19] Under T.P. § 14–845 a judgment foreclosing the right of redemption can be reopened upon a showing of constructive fraud within a year of the judgment.[20] In appellant's view the City's failure to cite the properties as vacant before including them in the tax sale was a breach of the City's legal duty imposed by § 14–817(c), amounting to constructive fraud. As we have stated, however, if taxes are unpaid the City has jurisdiction to hold a general tax sale including those properties. The issue as to abandoned or vacant properties relates to the ability of the City to go after the delinquent owners for the deficiency. Fundamental jurisdiction exists.

The citation of the properties, as stated previously, is only a requirement imposed upon the City in order to hold the previous owner liable for the difference between the sale price and the liens. This requirement does not create a legal duty to

---

19. Appellant's reply brief contends that the City's actions were more akin to actual fraud because—in appellant's view—the City deliberately included the properties in the tax sale knowing that the properties had not been cited as being abandoned or vacant. Because, as discussed *supra*, the sale of the properties was allowed under the general tax sale procedures, the City's sale of the properties did not constitute actual fraud.

20. Appellant concedes that in the case of one property, 571 Baker Street, where the judgment of foreclosure was entered on March 14, 2003, its claim of constructive fraud is barred by the statute.

cite the properties before the City has the power to assume jurisdiction to sell them at a tax sale. Even if there was such a duty, appellant has failed to show that the City's actions constituted fraud, constructive or otherwise. Appellant does not challenge that taxes were unpaid and due.

Although fraud is a well defined legal concept, for the purpose of this case, it is appropriate to review the ordinary meaning of the term "fraud." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 463–64 (10th ed.1998) defines fraud as:

"**1 a:** DECEIT, TRICKERY; *specif:* intentional perversion of truth in order to *induce another* to part with something of value or to surrender a legal right **b:** an act of deceiving or misrepresenting: TRICK **2a:** a person who is not what he or she pretends to be: IMPOSTOR; *also:* one who defrauds: CHEAT **b:** one that is not what it seems or is represented to be." (Emphasis added.)

In the legal sense, BLACKS LAW DICTIONARY 685 (8th ed.2004) provides the following definition:

"**1.** A knowing misrepresentation of the truth or concealment of a material fact to *induce another* to act to his or her detriment. Fraud is usu. a tort, but in some cases (esp. when the conduct is willful) it may be a crime.... **2.** A misrepresentation made recklessly without belief in its truth to induce another person to act.... **3.** A tort arising from a knowing misrepresentation, concealment of material fact, or reckless misrepresentation made to induce another to act to his or her detriment." (Emphasis added.)

That dictionary also defines constructive fraud as an "[u]nintentional *deception* or misrepresentation that causes injury to another." *Id.* at 686 (emphasis added). What these definitions have in common is the inherent requirement that the person or entity defrauded must have been in some way deceived or misled by the actions of the person or entity alleged to have committed the fraud.

We have also defined constructive fraud as a " 'breach of a legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because

of its *tendency to deceive others,* to violate public or private confidence, or to injure public interests.' " *Md. Envtl. Trust v. Gaynor,* 370 Md. 89, 97, 803 A.2d 512, 516–17 (2002) (quoting *Ellerin v. Fairfax Sav.,* 337 Md. 216, 236 n. 11, 652 A.2d 1117, 1126 n. 11 (1995)). Constructive fraud, as it might be relied on by an owner of property being sold for taxes, would normally relate to notice and things of that nature that would hinder the delinquent taxpayer from exercising his right to redeem, i.e., pay the delinquent taxes. Nothing that occurred in this case in any way hindered appellant's right to redeem. Nothing hindered its ability to pay the taxes and charges. It chose not to pay the taxes.

In the context of tax sales, a Maryland case discussing constructive fraud as grounds to void a tax sale is *Jannenga v. Johnson,* 243 Md. 1, 220 A.2d 89 (1966). The facts in *Jannenga* were very similar to those in *Hauver, supra.* The property, purchased at a tax sale, was owned prior to the tax sale by a person who resided in a different state. The tax sale and foreclosure proceedings were conducted in her absence. An affidavit stating that good faith efforts to locate and serve the owner was never filed. The lower court granted the owner's petition to set aside the judgment because taxes had been paid before the tax sale.[21] The Court determined that the lower court had jurisdiction to foreclose the right of redemption in accordance with the holding of the *Hauver* case. It affirmed the Circuit Court's judgment on different grounds, however, because the failure to file the affidavit amounted to constructive fraud and stated:

> "A failure to provide such notice or to make a good faith effort to do so may not amount to actual fraud in that one may not have been compelled by malicious motives to deceive the defendant, but it does, in any event, amount to constructive fraud since Jannenga, regardless of moral guilt

---

**21.** In that case there was evidence that taxes had actually been paid, but the town clerk and treasurer had failed to notify the county clerk who conducted the tax sale. The record in the case at bar does not reflect that the owner has paid any of the taxes due which, for the purpose of this appeal, amount to well over $150,000.

or intent to deceive, failed to perform a legal duty. The Court in *Hauver* did not pass upon the issue of constructive fraud present in the case at bar."

*Jannenga,* 243 Md. at 5, 220 A.2d at 91. Failure to comply with the notice requirements has since that time been considered constructive fraud. *See Arnold v. Carafides,* 282 Md. 375, 384 A.2d 729 (1978); *Smith v. Watner,* 256 Md. 400, 260 A.2d 341 (1970); *Brooks v. McMillan,* 42 Md.App. 270, 400 A.2d 436 (1979); *Karkenny v. Mongelli,* 35 Md.App. 187, 370 A.2d 137 (1977); *but see Walter E. Heller & Co. v. Kocher,* 262 Md. 471, 278 A.2d 301 (1971) (holding that so long as there is sufficient evidence to show that the owner received actual notice of the foreclosure proceedings, deviations from the procedures did not amount to constructive fraud); *Scheve v. McPherson,* 44 Md.App. 398, 408 A.2d 1071 (1979).

In *Carafides,* the Court set aside a judgment foreclosing the right of redemption because the owner was never notified of the proceedings. 282 Md. at 384, 384 A.2d at 733. The Court determined that the purchaser obtained the judgment of foreclosure by constructive fraud because, although its attorney filed an affidavit attesting to his reasonable efforts to locate the owner, the attorney failed to conduct a proper review of the public records. In essence, the attorney breached his legal duty to conduct a proper review and, as a result, the Court was deceived into believing that the owner could not be located.

Failure to comply with every part of the statute does not, in and of itself, however, as we have indicated, constitute constructive fraud, especially when it does not relate to notice or to the owner's ability to redeem. In *Kocher,* the purchaser—like in *Jannenga, supra*—failed to file the required affidavit stating that there had been diligent efforts to locate the lien holder. *Kocher,* 262 Md. at 481–82, 278 A.2d at 306. The Court, rejecting the claim of constructive fraud, stated:

"If [the lien holder] had been able to prove that it had not received effective actual knowledge of the equity of redemption foreclosure proceeding because of the failure of the

plaintiff to comply with Rules 106 and 107, notwithstanding the telephone calls and letters already mentioned, another issue might have been presented in the present case. This it did not do, however, and we express no opinion in regard to that possible issue."

*Id.* In the case *sub judice,* appellant received notice and was present throughout the foreclosure of the rights of redemption proceedings. Neither it nor the court were deceived by the City's actions, which, as stated previously, comply with the essential requirements of the general tax sale statute. The inclusion of the properties in the tax sale, therefore, did not constitute fraud, constructive or otherwise.

### D. Due Process

■ The Fourteenth Amendment of the United States Constitution provides "nor shall any State deprive any person of life, liberty, or property, without due process of law;" and Article 24 of the Maryland Declaration of Rights provides "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." These provisions are generally construed *in pari materia. See Bowie Inn, Inc. v. City of Bowie,* 274 Md. 230, 235 n. 1, 335 A.2d 679, 683 n. 1 (1975).

■ The United States Supreme Court has stated that "there can be no doubt that at a minimum [the Due Process Clause] require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950). Furthermore, " '[t]he fundamental requisite of due process of law is the opportunity to be heard.' " *Id.* at 314, 70 S.Ct. at 657 (quoting *Grannis v. Ordean,* 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914)). In the context of tax sales in Maryland, these due process provisions have centered around the issue of notice to the owner of the property. *Royal Plaza Community Ass'n,*

*Inc. v. Bonds,* 389 Md. 187, 884 A.2d 130 (2005); *Scheve v. Shudder, Inc.,* 328 Md. 363, 614 A.2d 582 (1992); *St. George Antiochian Orthodox Christian Church v. Aggarwal,* 326 Md. 90, 603 A.2d 484 (1992). Because there is no question as to the notice provided to appellant, the only issue left to discuss in terms of due process is the sufficiency of the procedures under the tax sale statute.

In *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the Supreme Court delineated the test for evaluating the sufficiency of process. The analysis requires the courts to determine

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* A land owner's interest in their property is one of the fundamental principles upon which both the United States' and Maryland's Constitutions were created. Great care must be taken in avoiding the erroneous deprivation of such property interests. The procedures in place for general tax sales, however, are more than sufficient to ensure the protection of this important private interest. The general tax sale statute gives the property owner the ability to participate in the tax sale proceedings. Furthermore, the tax sale purchaser must file an action seeking to foreclose the equity of redemption, a process in which the owner of the property has the opportunity to participate fully and, in this case, did participate fully. It just declined to pay the taxes. The owner is given every opportunity to redeem its property prior to the judgment foreclosing its right of redemption. In the present case, this right to redeem by paying the overdue taxes was available to the delinquent owner at every stage of the proceedings prior to judgment. Even after such judgment is entered, in the

event that an erroneous determination has been reached, the courts have the ability to review and set it aside in cases of lack of jurisdiction or fraud. Finally, this procedure is supported by the entirely legitimate purpose of providing marketable title to property purchased at tax sales. *Kolker,* 195 Md. at 475, 73 A.2d at 888. Consequently, the tax sale statute and procedures stand on solid constitutional ground.

In light of the constitutionality of the process, it is clear that appellant's due process argument is entirely without merit. It was on notice that taxes were overdue; it was on notice that the properties were to be disposed of at the tax sale; and, it had ample opportunity to contest any of the sales or pay the taxes due. In fact, in prejudgment proceedings it challenged the sales successfully as to two of the properties originally sold.[22] Furthermore, appellant was represented by counsel throughout the entire proceeding. Appellant's failure to timely contest the judgments, or even raise the issues now brought to our attention, prevents it from attacking those judgments on any ground other than fraud or lack of jurisdiction, both of which—as the Circuit Court correctly concluded—it has failed to prove in this case.

## IV. Conclusion

Section 14–845 of the Tax–Property Article, as relevant to the case at bar, provides that the Circuit Court may reopen a foreclosure judgment if the court lacked jurisdiction to issue the judgment or if there was fraud in the conduct of the foreclosure proceedings. In the case of constructive fraud, the motion to vacate the judgment must be filed within one year from the date the judgement is entered. The City was not required to cite the properties as abandoned or vacant in order to proceed with the tax sale. The delinquency of the taxes authorized the tax sale. Its failure to so cite the properties, only affected its ability to collect the difference

---

**22.** It was successful only because the dismissals were by agreement of the parties. The holdings rendered with this opinion would appear to have applied to those properties had those complaints to foreclose not been voluntarily dismissed.

between the sale prices and the liens on the properties from the delinquent taxpayer/property owner. Moreover, the condition precedent—the payment of the taxes and charges—was never complied with by the delinquent taxpayer.

Finally, appellant's due process rights were not violated. It was given ample opportunity to be heard and was represented by counsel at every stage of the proceedings. Appellant, as to the properties at issue, failed to raise any of the present questions until after the foreclosure judgments were entered. For the reasons stated herein, we hold that the Circuit Court did not err or abuse its discretion. Therefore, we affirm Judge Themelis's judgment denying appellant's motion to vacate the foreclosure judgments.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**