*WAMCO, INC. v. Northeast 400, LLC, et al.,* No. 2271, September Term, 2019, Argued: May 12, 2021

**FORECLOSURE ACTIONS – NOTICE REQUIREMENTS**
Holder of an economic interest in a limited liability company is not entitled to notice of foreclosure of the right of redemption and is not permitted to intervene in the foreclosure proceedings.

Circuit Court for Cecil County
Case No.: C-07-CV-18-000596

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2271

September Term, 2019

_____

WAMCO, INC.

v.

NORTHEAST 400, LLC, ET AL.

_____

Arthur,
Shaw Geter,
Gould,

JJ.

_____

Opinion by Gould, J.

_____

Filed: July 1, 2021

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case arises out of a tax sale of a piece of real property and the purchaser's complaint to foreclose the owner's redemption right. The owner of the subject property was a limited liability company, or LLC. The dispositive issue before us is whether the creditor of a member of the LLC was entitled to notice of the foreclosure action. The circuit court determined that the entity was entitled to notice, allowed the entity to intervene in the foreclosure proceeding, and vacated the previously-entered order foreclosing the right of redemption. For the reasons explained below, we reverse.

## BACKGROUND

### THE TAX SALE

Appellee Northeast 400, LLC ("Northeast") was the owner of the real property known as "Lot 3 – 222.525 Acre, Shady Beach Road, S/E of North East," tax parcel 05-131146 (the "Property"). Northeast failed to pay its property taxes, prompting a tax sale by Cecil County, Maryland on June 5, 2017. Appellant WAMCO, Inc. ("WAMCO") purchased the Certificate of Sale[1] for the Property. On August 1, 2018 and October 2, 2018, WAMCO sent notice to Northeast of its right to redeem the Property, as required by statute. *See* TP § 14-833(a-1)(3).

---

[1] Section 14-820(a) of the Tax Property Article ("TP") of the Maryland Annotated Code (1986, 2019 Repl. Vol.) provides that "[t]he [tax] collector shall deliver to the purchaser [at a tax sale,] a certificate of sale under the [tax] collector's hand and seal, or by the collector's authorized facsimile signature, acknowledged by the collector as a conveyance of land."

On November 24, 2018, WAMCO filed a complaint in the Circuit Court for Cecil County to foreclose Northeast's right to redeem the Property. Northeast's deadline to respond to the complaint was January 31, 2019. In late January 2019, an attorney representing Northeast contacted WAMCO's attorney to determine the amount of attorneys' fees and costs that Northeast needed to pay to redeem the Property and stop the foreclosure.[2] On January 23, 2019, Northeast started the redemption process by paying WAMCO a total of $2,476.40 as reimbursement of the legal fees associated with the foreclosure action. In return, WAMCO agreed to give Northeast until February 15, 2019 to pay the taxes and redeem the Property. WAMCO notified the Cecil County Department of Finance that Northeast had paid the fees and that it had given Northeast an extension. Northeast nevertheless failed to pay the taxes by the extended deadline and did not ask WAMCO or its attorney for additional time.

On March 1, 2019, the court entered the order foreclosing Northeast's right to redeem the Property (the "Foreclosure Order").[3]

THE MOTION FOR RECONSIDERATION

On March 21, 2019, Northeast filed a motion to reconsider and vacate the Foreclosure Order. Northeast argued that the Foreclosure Order was improperly entered because (1) although Northeast did not pay all delinquent taxes, interest, penalties, and

---

[2] Reasonable attorneys' fees and costs must be paid before property can be redeemed from foreclosure. *See* TP § 14-828(a)(4).

[3] The court signed the order on February 27, 2019.

costs, it was sufficient that it paid the legal fees and "has been able, ready and willing to 'bring into court[,]'[] 'tender' or give assurance that it is 'able, ready and willing to pay' the full amount due under the redemption statute[;]" and (2) WAMCO committed constructive fraud by accepting and keeping the legal fees from Northeast without informing the court of the payment.

WAMCO opposed the motion. WAMCO argued that: (1) Northeast failed to redeem the Property; (2) it properly foreclosed on the Property; and (3) Northeast's allegations failed to state a claim for constructive fraud.

### THE MOTION TO INTERVENE

On September 26, 2019, appellee Sambol Family Foundation, Inc. (the "Foundation") moved to intervene, alleging that it held a loan secured by the Property. Relying on its claimed collateral interest in the Property, the Foundation argued that it was entitled to notice of the right of redemption pursuant to TP § 14-836(b)(4)(i)(1). The Foundation further alleged that WAMCO committed constructive fraud because it did not comply with this notice requirement.

The Foundation contended that the debt was "memorialized" in a UCC Financing Statement (the "UCC-3" or the "financing statement"), which was attached as an exhibit. The UCC-3 was filed with the Maryland State Department of Assessments and Taxation ("SDAT") on July 28, 2011. The UCC-3 identified Lawrence E. Bathgate as the debtor

3

and Richard S. Sambol as the secured party. The collateral was described in the UCC-3 as:[4]

> One-half of Debtor's right, title and interest as a member of Northeast 400, LLC in and to property located in the Fifth Election District, County of Cecil, and State of Maryland known as Map 36, Parcel 76, Lot 2 and Lot 3.

The Foundation did not attach to its motion a "proposed pleading, motion, or response setting forth the claim or defense for which intervention [was] sought[,]" as is required by Maryland Rule 2-214(c).[5]

---

[4] The UCC-3 was twice amended thereafter, first on April 27, 2016, to change the secured party to the Estate of Richard Sambol, and then again on November 13, 2017, to change the secured party to the Foundation. These amendments to the UCC-3 were also attached as exhibits to the Foundation's motion.

[5] Rule 2-214 provides:

**(a)    Of Right.** Upon timely motion, a person shall be permitted to intervene in an action: (1) when the person has an unconditional right to intervene as a matter of law; or (2) when the person claims an interest relating to the property or transaction that is the subject of the action, and the person is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest unless it is adequately represented by existing parties.

**(b)    Permissive.**

(1) *Generally.* Upon timely motion a person may be permitted to intervene in an action when the person's claim or defense has a question of law or fact in common with the action.

(2) *Governmental Interest.* Upon timely motion the federal government, the State, a political subdivision of the State, or any officer or agency of any of them may be permitted to intervene in an action when the validity of a constitutional provision, charter provision, statute, ordinance, regulation, executive order, requirement, or agreement affecting the moving party is drawn in question in the action, or when a party to an

4

WAMCO opposed the Foundation's motion, alleging that the Foundation had no interest in the Property and was therefore not entitled to notice. WAMCO pointed out that the owner of the Property, Northeast, was not the debtor identified in the financing statement. WAMCO observed that the UCC-3 reflected only that the Foundation had an interest in Mr. Bathgate's "right, title and [i]nterest" in Northeast, not the Property. WAMCO argued that, even if Northeast had been the debtor, the financing statement did not create a lien on the Property, and, therefore, no notice was required. According to WAMCO, "[t]he Foundation did not record a single piece of paper with the Cecil County Clerk relating to the Property."

On December 18, 2019, the Foundation filed a belated memorandum in support of its motion. The memorandum was supported by an affidavit from Mr. Bathgate in which he stated that he held a one-third membership interest in Northeast, that Richard Sambol had made several loans to him, and that he owed Mr. Sambol a total of nine million dollars.

---

action relies for ground of claim or defense on such constitutional provision, charter provision, statute, ordinance, regulation, executive order, requirement, or agreement.

(3) *Considerations.* In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

**(c) Procedure.** A person desiring to intervene shall file and serve a motion to intervene. The motion shall state the grounds therefor and shall be accompanied by a copy of the proposed pleading, motion, or response setting forth the claim or defense for which intervention is sought. An order granting intervention shall designate the intervenor as a plaintiff or a defendant. Thereupon, the intervenor shall promptly file the pleading, motion, or response and serve it upon all parties.

Without pointing to any document, Mr. Bathgate claimed that the loans were secured by the Property.

Mr. Bathgate also stated in his affidavit that on June 29, 2009, he and Mr. Sambol had entered into a Pledge and Standby Assignment Agreement (the "Pledge Agreement") that granted Mr. Sambol a membership interest in Northeast. Mr. Bathgate attached a copy of the Pledge Agreement to his affidavit.

Mr. Bathgate further stated in his affidavit that on June 24, 2011, he executed a Partial Assignment of Membership Interest (the "Partial Assignment") in which he "assigned to Mr. Sambol one-half of [his] interest in distributions made by Northeast from the Property." Mr. Bathgate stated that the Partial Assignment had been recorded in the land records for Cecil County and attached a copy of the Partial Assignment to the affidavit.[6]

The Foundation argued that from the financing statements as well as the Partial Assignment, WAMCO was aware of the Foundation's interest in the Property, and the Foundation was therefore entitled to notice, and that WAMCO's failure to give notice amounted to constructive fraud. Finally, the Foundation claimed that allowing the sale to go through would be a fraud on creditors because the sale price was substantially lower than the value of the Property.

---

[6] Even though Mr. Bathgate swore in his affidavit that Mr. Sambol was admitted as a member of Northeast, the Partial Assignment identified the members as Mr. Bathgate, Chaim Melcer, and David S. Meiskin, each of whom owned one-third of the membership interests.

On December 20, 2019, the court held a hearing on Northeast's motion to reconsider and the Foundation's motion to intervene.[7] The court stated:

> The court has reviewed all of the documents, I have reviewed the cases that have been cited, and reviewed the memorandums. I've listened to the argument. With regard to this matter, as far as the documents that the court has reviewed, [the] court does find partial assignment of membership interest does create a lien interest, claim or judgment. And in accordance with that, 14-836 (B) (4) (i) (1), requires notice. As such, I'm permitting Sambol to intervene.

The court went on to state:

> . . . As I indicated with regard to the finding that I've made that this does in fact create a claim. I do find then that Sambol is entitled to notice pursuant to 14-836 (B), and as a result the court finds that failure to comply with the statutes would constitute constructive fraud, and will vacate that decree.

After the court made its ruling, the attorney for Northeast did not present any argument on its motion for reconsideration. The court reduced its decision to a written order entered on January 3, 2020, which granted the Foundation's motion to intervene, vacated the Foreclosure Order, and determined that all other outstanding motions were moot.

## WAMCO V. THE HAIMISH GROUP, LLC

When the court held the hearing to consider Northeast's motion to reconsider and the Foundation's motion to intervene, it also heard a motion to reconsider filed in a related but different foreclosure action: *WAMCO, Inc. v. The Haimish Group, LLC, et al.* ("Haimish"), Case number: C-07-CV-18-000598 (the "Haimish Case").

---

[7] As discussed below, this hearing was consolidated with a hearing on some overlapping issues in a related case.

On June 5, 2017, when WAMCO purchased the Property at the tax sale, it also purchased at a tax sale a nearby lot, "Lot 1 -77.1282 Acre, Shady Beach Road, South East of North East, Maryland and known as tax parcel 05-131138." The entities that owned the properties appear to have common ownership or are otherwise affiliated.

WAMCO filed this action the same day that it filed its complaint to foreclose redemption rights in the Haimish Case. As in this case, on March 1, 2019, the court entered an order foreclosing the right of redemption of Haimish, the property owner. And, as in this case, Haimish, represented by the same attorney who represents Northeast in this action, filed a motion for reconsideration on the same grounds alleged here: that Haimish was "'able, ready and willing to pay' the taxes owed," and that WAMCO committed constructive fraud because it accepted the payment for the legal fees without informing the court. Not surprisingly, WAMCO advanced the same arguments in opposition to the motion as it did against Northeast: that Haimish did not redeem the property, that WAMCO followed all of the necessary procedures, and that there was no constructive fraud.

On December 20, 2019, the court held a consolidated hearing for the pending motions in both cases. In the Haimish Case, the court entered an order denying Haimish's motion for reconsideration. Upon Haimish's appeal, we affirmed the court's decision in an unreported opinion. *See The Haimish Group v. WAMCO*, No. 2199, Sept. Term 2019 (Apr. 14, 2021).

WAMCO argues that the case against Northeast should have been decided as the Haimish Case was, and that Northeast's motion for reconsideration should have been denied.

8

WAMCO timely appealed and presents two questions that we have reframed as follows:[8]

> 1.   Did the court err in granting the Foundation's Motion to Intervene?
>
> 2.   Did the court err in vacating the February 27, 2019 Order foreclosing Northeast's right of redemption?

We answer both questions in the affirmative and reverse.[9]

---

[8] WAMCO's questions were:

1. Whether the Cecil County Circuit Court erred as a matter of law, by granting the Foundation's Motion to Intervene? Specifically, did the Cecil County Circuit Court err by allowing the Foundation to intervene as a matter of right when the Foundation asserted no legal interests against Northeast 400, or Northeast 400's assets?

2. Whether the Cecil County Circuit Court erred as a matter of law, by vacating the February 27, 2019 Order foreclosing Northeast 400's right of redemption? Specially, absent the intervention of the Foundation, did the Cecil County Circuit Court err by not dismissing Northeast 400's Motion, as it did in the case *WAMCO, Inc., et al. v. Haimish Group*, Case No. C-07-CV-18-598?

[9] Northeast filed a notice of cross-appeal and a supporting brief. However, because the judgment was entirely in Northeast's favor, it was not permitted to do so. *See Offutt v. Montgomery Cnty. Bd. of Educ.*, 285 Md. 557, 564 n.4 (1979). Accordingly, we shall dismiss the cross-appeal, but we will accept the arguments advanced in Northeast's brief as a request for this court to affirm on an alternative basis. *See id.*

## DISCUSSION

## I.

## STANDARD OF REVIEW

An order revising or setting aside a judgment is generally reviewed on an abuse of discretion standard. *Canaj, Inc. v. Baker and Division Phase III, LLC*, 391 Md. 374, 400-01 (2006). So too are orders granting a motion to intervene. *Maryland-Nat'l Cap. Park & Plan. Comm'n v. Town of Washington Grove*, 408 Md. 37, 64 (2009). A trial court abuses its discretion "when no reasonable person would take the view adopted by the trial court, or when the court acts without reference to any guiding rules or principles, or when the ruling is clearly against the logic and effect of facts and inferences before the court." *Gizzo v. Gerstman*, 245 Md. App. 168, 201 (2020). In addition, a trial court also abuses its discretion if its ruling rests on an error of law. *See Bass v. State*, 206 Md. App. 1, 11 (2012). A trial court's legal conclusions are reviewed without deference. *Pizza di Joey, LLC v. Mayor of Baltimore*, 470 Md. 308, 339 (2020).

## II.

## ANALYSIS

The requirements for foreclosing the right of redemption to property are spelled out in Title 14 of the Tax-Property Article. Section 14-827 of the Title provides that "[t]he owner or other person that has an estate or interest in the property sold by the collector may redeem the property at any time until the right of redemption has been finally foreclosed under the provisions of this subtitle." The statute provides that to redeem the property, the owner or person with an interest in the property must pay:

10

> (1) the total lien amount paid at the tax sale for the property together with interest;
> (2) any taxes, interest, and penalties paid by any holder of the certificate of sale;
> (3) . . . any taxes, interest, and penalties accruing after the date of the tax sale;
> (4) in the manner and by the terms required by the collector, any expenses or fees for which the plaintiff or the holder of a certificate of sale is entitled to reimbursement under § 14-843 of this subtitle; and
> (5) for vacant and abandoned property sold under § 14-817 of this subtitle for a sum less than the amount due, the difference between the price paid and the unpaid taxes, interest, penalties, and expenses.

TP § 14-828(a).

Notice of the foreclosure action must be sent to "all persons having a recorded interest, claim, or lien, including a judgment, who have not been made a defendant in the proceeding[.]"  TP § 14-836(b)(4)(i)(1).  The dispositive issue here is purely a legal one: whether the Foundation held the type of interest in the Property that, under TP § 14-836(b)(4)(i)(1), entitled it to such notice.

The Foundation argues that it held such an interest because under section 1 of the Partial Assignment, Mr. Bathgate assigned to Mr. Sambol an interest in the Property described as "a 16-2/3% *pari passu* interest in the Property."  The Foundation argues that the plain language of this clause means what the last four words of it say—that Mr. Sambol was the assignee of an "interest in the Property."[10]  And, as a successor to Mr. Sambol's

---

[10]  The Foundation acknowledges that Mr. Bathgate did not own an interest in the Property, thus it argues that it acted as an agent for Northeast—the owner of the Property— in assigning an interest in the Property.  For that proposition, the Foundation contends that the consent provision of section 1 operates as the authorization for Mr. Sambol to act as an agent in that capacity.  As explained below, however, the consent language merely confirms Northeast's consent to Mr. Sambol's assignment of an economic interest in Northeast.

11

"interest in the Property," the Foundation contends that it was entitled to the notice required by statute.

Because the Foundation premises its argument on a cherry-picked phrase in the Partial Assignment, we begin our analysis with the principles of contract interpretation that inform our analysis. "Maryland courts subscribe to the objective theory of contract interpretation." *Credible Behav. Health, Inc. v. Johnson*, 466 Md. 380, 393 (2019). "[W]hen the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 178-79 (2001); *see also Ocean Petroleum Co., Inc. v. Yanek*, 416 Md. 74, 86 (2010) (courts give effect to unambiguous contract language as written "without concern for the subjective intent of the parties at the time of formation"). "[W]e accord a word its usual, ordinary and accepted meaning unless there is evidence that the parties intended to employ it in a special or technical sense." *Clendenin Bros., Inc. v. U.S. Fire Ins. Co.*, 390 Md. 449, 459 (2006). We construe the contract in its entirety, giving meaning to "every clause and phrase, so as to not omit an important part of the agreement." *Balt. Gas & Elec. Co. v. Com. Union Ins. Co.*, 113 Md. App. 540, 554 (1997). In doing so, we try to avoid "an absurd or unreasonable result." *Middlebrook Tech, LLC v. Moore*, 157 Md. App. 40, 66 (2004).

The Partial Assignment provides, in relevant part, as follows:

1. Northeast hereby consents to the assignment by [Mr. Bathgate] to [Mr. Sambol], subject to the TD Bank Mortgage, a 16-2/3% *pari passu* interest in the Property, representing one-half (1/2) of the 33-1/3% interest of [Mr. Bathgate] in and to all distributions made and to be made by Northeast to [Mr. Bathgate] from and on account of all

12

payments received and to be received by Northeast pursuant to the sale of the Property and/or the sale of Northeast 400, LLC.

2. [Mr. Bathgate], individually, as Assignor, hereby assigns to [Mr. Sambol] one-half (1/2) of the 33-1/3% interest of [Mr. Bathgate] in and to all distributions made and to be made by Northeast to [Mr. Bathgate] from and on account of all payments received and to be received by Northeast pursuant to the sale of the Property and/or the sale of Northeast 400, LLC.

3. [Mr. Bathgate]("Assignor") hereby appoints [Mr. Sambol] as the true and lawful attorney agent and attorney in [Mr. Bathgate] coupled with an interest which shall be irrevocable in law or in equity so long as any indebtedness of [Mr. Bathgate] to [Mr. Sambol] remains outstanding, to have, use and take all lawful means and methods for collection and/or recovery, subject to the TD Bank Mortgage of one-half (1/2) of the 33-1/3% interest of [Mr. Bathgate] including but not limited to those monies from or on account of all payments received and/or to be received by [Mr. Bathgate] pursuant to the sale of the property and/or the sale of Northeast 400, LLC.

The Foundation's interpretation of section 1 cannot be reconciled with the structure and text of the Partial Assignment. We first note that section 1 does not purport to operate as the assignment. Instead, section 1 confirmed Northeast's consent to an assignment of a specific interest described with the "*pari passu*" clause on which the Foundation relies. Consenting to an assignment is one thing; effectuating an assignment is another. Section 1 accomplishes only the former; we must look elsewhere for the latter.

We need not look far, as the language effectuating the assignment is set forth in section 2, which unambiguously describes Mr. Bathgate's economic interest in Northeast as the object of the assignment. The "*pari passu* interest in the Property" language from section 1 must be understood in that structural context.

13

The phrase "*pari passu*" means "by equal step" or "[p]roportionally; at an equal pace; without preference[.]" BLACK'S LAW DICTIONARY (11th ed. 2019).[11] The use of that phrase in section 1 means that Northeast was consenting to the assignment of an interest that stood on equal footing, without preference, as the interest retained by Mr. Bathgate, which we know from the first "Whereas" clause in the Agreement was a membership interest in Northeast.[12] This interpretation is confirmed by the rest of section 1, seemingly ignored by the Foundation, which describes the "*pari passu* interest in the Property" as "representing" Mr. Bathgate's interest "in and to all distributions made and to be made by Northeast" for the "sale of the Property and/or the sale of Northeast[.]" In other words, in section 1, Northeast was consenting to the assignment of only an economic interest in Northeast, which precisely matches the nature of the assigned interest defined and conveyed in section 2.

In section 3, the intention of the parties comes into sharper focus. There, Mr. Bathgate appointed Mr. Sambol as an attorney-in-fact to "have, use and take all lawful means and methods for collection and/or recovery . . . of one-half (1/2) of the 33-1/3% interest" of Mr. Bathgate. The appointment was irrevocable "so long as any indebtedness

---

[11] *See W.F. Gebhardt & Co., Inc. v. American European Insurance Co.,* No. 93, September Term, 2020, slip op. at 14 (Md. App. May 26, 2021) ("In applying the objective theory of contract interpretation, we look to dictionary definitions to identify the common and popular understanding of the words used in the contract as evidence of what a reasonable person in the position of the parties would have understood those terms to mean.")

[12] The first Whereas clause states: "WHEREAS, Northeast has three members: Lawrence E. Bathgate, II; Chaim Melcer; and David S. Meiskin; and Lawrence E. Bathgate, II has a 33 1/3% undivided interest in Northeast[.]"

of [Mr. Bathgate] to [Mr. Sambol] remain[ed] outstanding." This language is consistent with the preceding sections and again confirms that the nature of the assigned interest was an economic interest in Northeast, not an interest in the Property.[13]

Our interpretation of the Partial Assignment aligns with the relevant provisions of the Maryland Limited Liability Company Act, codified in Title 4A of the Corporations and Associations Article ("CA") of the Maryland Annotated Code (1974, 2014 Repl. Vol.). The owners of an LLC are called members, CA § 4A-101(n), and their interests are called "membership interests." CA § 4A-101(o). A membership interest is personal property, CA § 4A-602, and consists of two types of interests: an economic interest and a non-economic interest. CA § 4A-101(o). An economic interest is defined as "a member's share of the profits and losses of a limited liability company and the right to receive distributions from a limited liability company." CA § 4A-101(i).[14] Unless otherwise agreed by the members, only an economic interest is assignable. CA § 4A-603(a)(1). Thus, Mr. Bathgate, as owner of a 33-1/3% membership interest in Northeast, had both economic and noneconomic interests in the LLC, but only his economic interest in the LLC was

---

[13] It further clarifies that the assignment applies only so long as the debt was outstanding. In that sense, therefore, Mr. Bathgate's economic interest secured his debt obligation to Mr. Sambol.

[14] A non-economic interest is defined as "all of the rights of a member in a limited liability company other than the member's economic interest, including, unless otherwise agreed, the member's right to: (1) Inspect the books and records of the limited liability company; and (2) Participate in the management of and vote on matters coming before the limited liability company; and (3) Act as an agent of the limited liability company." CA § 4A-101(p).

15

assignable.[15] And that's precisely what section 2 of the Partial Assignment accomplished: an assignment of 50 percent of Mr. Bathgate's economic interest in Northeast to Mr. Sambol.

The financing statements on which the Foundation relies support our conclusion. As we stated earlier, the UCC-3 defines the collateral as "[o]ne-half of Debtor's right, title and interest as a member of Northeast 400, LLC in and to [the Property]." The words "Debtor's right, title and interest" meant that the collateral was owned by Mr. Bathgate, as the debtor. The rest of the phrase—"as a member of Northeast 400, LLC in and to [the Property]"—meant that Mr. Bathgate's "interest" in the Property existed only through his membership interest in Northeast. That interest, of course, was not a fee simple interest in the Property itself, but rather, an interest in the profits generated by the Property. In other words, the UCC-3 and the Partial Assignment referred to the same thing: an economic interest in Northeast.

As noted above, notice of the right of redemption is required to be sent only to those who hold an interest in the subject property, not to those who maintain an economic interest in the entity that owns the property. TP § 14-836(b)(4)(i)(1). As the interest acquired by the Foundation was an economic interest in Northeast, the Foundation was not entitled to

_____

[15] Mr. Bathgate did not have an ownership interest in the Property; thus he could not have assigned an interest in the Property even if he had wanted to. "An unqualified assignment generally operates to transfer to the assignee all of the right, title and interest of the assignor in the subject of the assignment and does not confer upon the assignee any greater right than the right possessed by the assignor." *Univ. Sys. of Md. v. Mooney*, 407 Md. 390, 412 (2009). Mr. Bathgate possessed only a personal property interest in Northeast, not an interest in the Property owned by Northeast.

notice. Because the Foundation was not entitled to notice, the court erred in permitting the Foundation to intervene and in finding that WAMCO committed constructive fraud by failing to provide notice to the Foundation. Accordingly, the court erroneously vacated the Foreclosure Order.

As noted above, Northeast filed a cross-appeal on the issues raised in its motion to reconsider that the trial court did not address. Although the cross-appeal was improper, we shall treat Northeast's brief as a request to affirm the circuit court on other grounds appearing in the record. *See City of Frederick v. Pickett*, 392 Md. 411, 424 (2006) (holding that an appellate court can affirm "on any ground adequately shown by the record, whether or not relied upon by the trial court").

Having thoroughly reviewed the arguments advanced by Northeast, we see no basis to affirm on other grounds. In a nutshell, Northeast claims that the Foreclosure Order was procured by constructive fraud. Northeast contends that: (1) it started the process of redeeming the Property by paying the attorneys' fees; (2) it secured an extension of time to redeem the Property; (3) it was ready, willing, and able to redeem the Property; and (4) despite Northeast's actions, WAMCO erroneously proceeded with the foreclosure. There is no merit to Northeast's position.

Maryland law clearly articulates the five payments required by the property owner to redeem the property. TP § 14-828(a). Northeast complied with only one of the requirements: payment of WAMCO's legal fees and costs. *See id.* That being the case, WAMCO was permitted under the statute to proceed with the foreclosure of redemption rights. Because there was no breach of duty, there was no constructive fraud. *See Canaj*,

17

391 Md. at 421-22 (quotation and emphasis omitted) (constructive fraud is the "breach of a legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injury public interests."). Accordingly, Northeast's motion for reconsideration was without merit and therefore, does not provide an alternative basis to affirm.[16]

> **CROSS-APPEAL DISMISSED; JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY REVERSED. CASE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION TO REINSTATE THE FORECLOSURE ORDER ENTERED ON JANUARY 3, 2020. PENDING MOTIONS IN THIS CASE ARE DENIED AS MOOT. COSTS TO BE PAID IN EQUAL SHARES BY APPELLEES.**

---

[16] After the briefs were filed in this case, the Foundation and Northeast moved to strike the appendix to WAMCO's reply brief, arguing that WAMCO had improperly attached a Reassignment, Termination and Release of Assignment of Mortgage and Promissory Note (the "Release"), a document that was not in the record. WAMCO opposed this motion, arguing that the document was necessary because the Foundation's brief made false claims and contending that the court should take judicial notice of the document. Subsequently, WAMCO moved for this Court to take judicial notice of the Release. As we have decided this case without considering the Release, all such motions are denied as moot.

18